Peter Strojnik, 6464
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602.297.3019
Facsimile: 602.296.0135
Strojnik@aol.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA
TUCSON DIVISION

In Re:                   )    NO. 06-00108-TUC-JMM
                     )    Chapter 13
                     )
TERRI ANN FLASHA       )    **MOTION TO DISMISS CHAPTER 13 OR**
                     )         **CONVERT TO CHAPTER 7**
              Debtor,)
                     )
                     )
                     )
                     )
_____)

## SUMMARY OF MOTION

This filing has been contemplated by the Debtor for approximately one year. Debtor employed the one year productively. Debtor and her husband, David Flasha, hid and transported their assets out of state and removed Mr. Flasha from the jurisdiction of this Court. For example, during the one year prior to the filing of the Petition, the Debtor and her husband transported four barrels of precious metals concentrates out of state (Metech in California and Catalytics, S.A. in New Jersey) and gold coin and bullion to the Philippines in order to avoid creditors and defraud this Court. Additionally, as late as November of 2005, the Flashas issued $106,000 in promissory notes and security instruments to their friends and relatives. At the same time, David Flasha made a direct statement that he holds substantial community assets in the form of 1oz gold coins and 10 oz gold bars in the Philippines, and that he can produce 120 1oz gold coins in 24 hours.

The Debtor has failed to disclose the majority of her assets. She has failed to disclose her interests in various corporations and LLC's; she has failed to disclose her interest in 1 oz and 10 oz gold pieces; she has failed to disclose her (indirect) interests in the precious metals

-1-

concentrates. Additionally, Debtor has intentionally understated her liabilities in order to qualify as a Chapter 13 Debtor. Debtor has intentionally misstated the amounts of certain debts, and she has deliberately refused to list $4,087,000 of unsecured claims that are specifically known to her. Debtor's deliberate hiding of assets needs to be investigated and prosecuted. This entire Chapter 13 proceeding should be dismissed or converted to Chapter 7.

# I
## DEBTOR'S UNSECURED CLAIMS EXCEED MAXIMUM ALLOWABLE AMOUNT

**1. Schedules Improperly List Unsecured Claims As Secured Claims**. Schedule D (Exhibit "A" hereto) filed by the Debtor claims that certain "loans" from Debtor's family members are "secured" by Debtor's realty. The only evidence of these "debts" are self serving "Property Liens" filed by the Debtor's husband. These liens state, on their face, as follows:

| LIEN DATE | LIEN TO | LIEN AMOUNT | CLAIMED PN DATE | EXHIBIT HERETO |
|-----------|---------|-------------|-----------------|----------------|
| 10-20-05 | Harry & Opal Merrifield | $60,000.00 | 03-22-05 | "B" |
| 10-20-05 | Paul Flasha | $20,000.00 | 10-15-05 | "C" |
| 11-11-05 | Doris Flasha | $6,000.00 | 11-09-05 | "D" |
| 11-11-05 | Steven Flasha | $8,000.00 | 11-09-05 | "E" |
| 11-11-05 | Harry & Opal Merrifield | $12,000.00 | 11-09-05 | "D" |
| | **TOTAL** | **$106,000.00** | | |

Even a cursory review of these "liens" demonstrates that they are nothing but a sham: They were given to the Debtor's relatives within 4 months of the filing of the bankruptcy; they are clearly not "mortgages"; *see* ARS Title 33, Chapter 6, Article 1; they are clearly not "Deeds of Trust", *see* ARS Title 33, Chapter 6.1, Article 1; and they are clearly not any other type of recognizable lien on realty, *see* ARS Title 33, Chapter 7. Additionally, since the liens are not signed by the husband and the wife, they are ineffective[1]. Debtor's debts listed above

---

[1] A.R.S. §25-214 (C) provides:

Management and control

-2-

are noncontingent, unsecured and liquidated.

## 2. Debtor Erroneously Lists The Debt To Peter Strojnik, P.C. In The Amount Of $32,859.20; The True Amount Is $129,650.75.

In addition to $106,000.00 improperly listed as "secured", Debtor likewise makes a glaring error in computing the claim by Peter Strojnik, P.C. In Schedule F, debtor lists the amount of the claim by Peter Strojnik at $32,859.20. This amount is vastly understated: The verified complaint (Exhibit "F") indicates in paragraphs 294 and 295 that the Debtor is indebted to Creditor as follows: $74,780.75 for General Representation; $54,870.00 for Wintergreen Representation, for the total of $129,650.75[2].

The amount of this claim is "readily determinable" – all we need to do is look at the Statements of Account cumulatively attached hereto as Exhibit "G". *See In re Wenberg*, 902 F.2d 768 (9th Cir. 1990), where the 9th Circuit Court of Appeals affirmed and adopted the opinion of the 9th Circuit Bankruptcy Panel, which had said that "[t]he definition of 'ready determination' turns on the distinction between a simple hearing to determine the amount of a

C. Either spouse separately may acquire, manage, control or dispose of community property or bind the community, except that joinder of both spouses is required in any of the following cases:

1. Any transaction for the acquisition, disposition or encumbrance of an interest in real property other than an unpatented mining claim or a lease of less than one year.

2. Any transaction of guaranty, indemnity or suretyship.

3. To bind the community, irrespective of any person's intent with respect to that binder, after service of a petition for dissolution of marriage, legal separation or annulment if the petition results in a decree of dissolution of marriage, legal separation or annulment.

Although generally spouses have equal rights to bind the community property, certain transactions will not bind the community unless both spouses join in the transaction. A.R.S. § 25-214. These include "any transaction for the acquisition, Disposition or encumbrance of an interest in real property" and "any transaction of guaranty, indemnity or suretyship." A.R.S. § 25-214 (C)(1), (2). *MacCollum v. Perkinson*, 185 Ariz. 179, 913 P.2d 1097 (App.1996)

[2] The breach of contract count is only one of the alternative counts alleged against Debtor. The other counts include (1) Count 3, Racketeer Influenced and Corrupt Organizations Act (RICO),18 U.S.C. §§ 1961-1968; (2) Count 6, Pattern of Unlawful Activity in Violation of State Statute A.R.S. 13-2314.04; (3) Count 9, Common Law Fraud; (4) Count 12, Misrepresentation; (5) Count 15, Concealment.

-3-

certain debt, and an extensive and contested evidentiary hearing in which substantial evidence may be necessary to establish amounts or liability." *In re Wenberg*, 94 B.R. 631, 634 (9th Cir. BAP 1988). No extensive of contested evidentiary hearing in which substantial evidence may be necessary to establish the amount of liability is needed here.

### 3. Debtor Failed To List Other Debts And Claims

Debtor has known at least since the filing of the Verified Complaint (Exhibit "F") that the following additional claims are present:

| CLAIMANT | AMOUNT |
|---|---|
| Bill West | Unknown |
| Cameron McQueen | $300,000 |
| Chris Edwards | $350,000 |
| Christian Weber | $200,000 |
| David Harris | $1,000,000 |
| Doug Brown | Unknown |
| Jerry Nobles | $10,000 |
| Marty Hackman | $200,000 |
| MCC Technologies | $300,000 |
| Richard Austin | $987,000 |
| Robert Holladay | Unknown |
| Roger Wagner | $200,000 |
| Ron Dean | $40,000 |
| Russell Jaffe | Unknown |
| Stanfield Group | Unknown |
| Will Adams | Unknown |
| **TOTAL** | **$4,087,000** |

Debtor has been alerted about these potential and actual claims previously, however, Debtor has chosen not to make the appropriate corrections. The total amount of unsecured claims, $4,617,937.55 exceeds the maximum allowable amount for a Chapter 13 Debtor.

-4-

## II
## DEBTOR'S FILING WAS IN BAD FAITH IN THAT IT FAILS TO DISCLOSE THE ENTIRETY OF THE DEBTS AND A SUBSTANTIAL AMOUNT OF THE ASSETS

The infamy of David and Terri Flasha, and their companies[3] is well known and well deserved in the precious metals mining and refining industry. It is likewise well known in the Courts. Honorable Paul Katz, the Judge of the Maricopa County Superior Court perceptively observed that Flasha's "credibility", "honesty" and "integrity" are indeed on thin ice:

> [Mr. Flasha]'s credibility is on very thin ice in these proceedings if you look at the file from matters that occurred before this Judge took the file over in terms of his honesty or integrity with the Court delaying proceedings unnecessarily[4].

The Court made this determination because Mr. Flasha has no compunction about lying in court, out of court, or anywhere the opportunity arises. So, too, it is not surprising that the Debtor in this matter utterly failed to disclose the following:

1. Her direct interest in Can Pay Mining Co., Inc., and her indirect interest in:

   a. Two barrels of precious metals concentrates presently in possession of Metech International as Involuntary Trustee[5];

   b. Two barrels of precious metals concentrates held by Catalytics S.A. as Involuntary Trustees

2. Her interest in Can Pay Mining 2004, LLC;

3. Her interest in Can Pay Processing, LLC.

---

[3] David and Terri Flasha are the owners of Can Pay Mining, Inc.; Can Pay Mining 2004, LLC, and Can Pay Processing, LLC. None of the Debtor's interests in these companies were disclosed in the Petition verified under perjury by Terri Flasha.

[4] Exhibit "H".

[5] The undersigned has been attempting to achieve a voluntary transfer of possession of these barrels from Metech (who holds them as involuntary trustee) to AmeriChem Engineering Services, Inc., a highly respectable local company, so that AmeriChem may hold these barrels as the Trustee pursuant to Involuntary Trusteeship against Can Pay. The undersigned has not been able to secure possession of these barrels.

-5-

4. Her interest in *at least* 120 gold 1oz pieces and other gold bullion held by David Flasha in the Philippines and additional 10 oz bars held by Flasha in the Philippines[6].

### III
### CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons it is respectfully requested that this Court dismiss the Chapter 13 proceedings or convert the same to a Chapter 7 proceeding.

RESPECTFULY SUBMITTED this 16th day of March, 2006.

PETER STROJNIK

By: Peter Strojnik
Attorney for Peter Strojnik, P.C.

---

[6] David Flasha admitted to the undersigned that he has at least this amount of gold accessible within 24 hours. *See* Declaration of Peter Strojnik appended hereto as Exhibit "I".

-6-

## CERTIFICATE OF SERVICE

The original mailed /e-mailed/electronically filed this 16th day of March, 2006, with:

The Clerk of the US Bankruptcy Court, Tucson, Arizona

Copies e-mailed to:

Gary R. Stickell
301 East Bethany Home Road
Suite B100
Phoenix, Arizona 85012
*by e-mail gstickell@garystickell.net only*
Attorney for the debtor

Dianne C. Kerns
7320 N. LaCholla #154 PMB 413
Tucson, Arizona 85741-2305
Trustee
*By e-mail mail@dcktrustee.com only*

Hilary B. Bonial, Esq.
Brice, Vander Linden & Wernick, P.C.
9441 LBJ Freeway, Suite 350
Dallas, Texas 75243
Creditor
*by e-mail notice@bkcylaw.com only*

-7-

Form 6-Summary
(10/05)

# United States Bankruptcy Court
## District of Arizona

In re     **TERRI ANN FLASHA** _____     Case No.   __4:06-bk-00108__

_____ Debtor

Chapter_____ **13** _____

## SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities."

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | AMOUNTS SCHEDULED | | |
| --- | --- | --- | --- | --- | --- |
| | | | ASSETS | LIABILITIES | OTHER |
| A - Real Property | Yes | 1 | 267,500.00 | | |
| B - Personal Property | Yes | 4 | 5,450.00 | | |
| C - Property Claimed as Exempt | Yes | 1 | | | |
| D - Creditors Holding Secured Claims | Yes | 2 | | 531,739.00 | |
| E - Creditors Holding Unsecured Priority Claims | Yes | 1 | | 0.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 9 | | 328,146.00 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 6 | | | |
| I - Current Income of Individual Debtor(s) | Yes | 1 | | | 2,095.55 |
| J - Current Expenditures of Individual Debtor(s) | Yes | 1 | | | 5,541.00 |
| Total Number of Sheets of ALL Schedules | | 27 | | | |
| Total Assets | | | 272,950.00 | | |
| Total Liabilities | | | | 859,885.00 | |

# EXHIBIT "A"

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037          Best Case Bankruptcy

Form B6D
(10/05)

In re  **TERRI ANN FLASHA**                                                Case No. ___**4:06-bk-00108**___

_____

Debtor

# SCHEDULE D. CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C§112; Fed.R.Bankr.P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community". If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. **xxxxxxxxx0772**<br><br>**Americas Servicing Co**<br>**7485 New Horizon Way**<br>**Frederick, MD 21703** | X | - | **Opened 3/22/05 Last Active 11/08/05**<br>**First Mortgage**<br>**Location: 399 W. Via De Arboles, Queen Creek AZ**<br>**held by DT Living Trust Dated January 16, 2003, Debtors'**<br>**self settled trust** | | | | | |
| | | | Value $            **535,000.00** | | | | **425,739.00** | **0.00** |
| Account No.<br><br>**Doris Flasha**<br>**POB 163**<br>**Whitecourt, Alberta, Canada T7S1N4** | X | C | **November 2005**<br><br>**Location: 399 W. Via De Arboles, Queen Creek AZ**<br>**held by DT Living Trust Dated January 16, 2003, Debtors'**<br>**self settled trust** | | | X | | |
| | | | Value $            **535,000.00** | | | | **6,000.00** | **0.00** |
| Account No.<br><br>**Harry and Opal Merrifield**<br>**Mesa, AZ** | X | C | **November 2005**<br><br>**Location: 399 W. Via De Arboles, Queen Creek AZ**<br>**held by DT Living Trust Dated January 16, 2003, Debtors'**<br>**self settled trust** | | | | | |
| | | | Value $            **535,000.00** | | | | **12,000.00** | **0.00** |
| Account No.<br><br>**Harry and Opal Merrifield**<br>**Mesa, AZ** | X | C | **September 2005**<br><br>**Location: 399 W. Via De Arboles, Queen Creek AZ**<br>**held by DT Living Trust Dated January 16, 2003, Debtors'**<br>**self settled trust** | | | X | | |
| | | | Value $            **535,000.00** | | | | **60,000.00** | **0.00** |

__1__   continuation sheets attached

Subtotal                    **503,739.00**
(Total of this page)

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                              Best Case Bankruptcy

Form B6D - Cont.
(10/05)

In re **TERRI ANN FLASHA**                                        Case No. __4:06-bk-00108__

                                          Debtor

## SCHEDULE D. CREDITORS HOLDING SECURED CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | H W J C | Husband, Wife, Joint, or Community — DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. | | | October 2005 | | | | | |
| Paul Flasha PO Box 163 Whitecourt, Alberta, Canda T7S1N4 | X | C | Location: 399 W. Via De Arboles, Queen Creek AZ held by DT Living Trust Dated January 16, 2003, Debtors' self settled trust | | | X | | |
| | | | Value $                535,000.00 | | | | 20,000.00 | 0.00 |
| Account No. | | | Novemer 2005 | | | | | |
| Steven Flasha POB 417 Whitecourt, Alberta, Canada T7S1N4 | X | C | Location: 399 W. Via De Arboles, Queen Creek AZ held by DT Living Trust Dated January 16, 2003, Debtors' self settled trust | | | X | | |
| | | | Value $                535,000.00 | | | | 8,000.00 | 0.00 |
| Account No. | | | | | | | | |
| | | | | | | | | |
| | | | Value $ | | | | | |
| Account No. | | | | | | | | |
| | | | | | | | | |
| | | | Value $ | | | | | |
| Account No. | | | | | | | | |
| | | | | | | | | |
| | | | Value $ | | | | | |

Sheet __1__ of __1__ continuation sheets attached to
Schedule of Creditors Holding Secured Claims

Subtotal
(Total of this page)                       28,000.00

Total                                      531,739.00
(Report on Summary of Schedules)

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                         Best Case Bankruptcy

Form B6E
(10/05)

In re    **TERRI ANN FLASHA**                               ,       Case No.    __4:06-bk-00108__

                                       Debtor

# SCHEDULE E. CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

    A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

    The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C.§112; Fed.R.Bankr.P. 1007(m).

    If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether husband, wife, both of them or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community". If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

    Report the total of claims listed on each sheet in the box labeled "Subtotal" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

    Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotal" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. If applicable, also report this total on the Means Test form.

■ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS** (Check the appropriate box(es) below if claims in that category are listed on the attached sheets.)

☐ **Domestic support obligations**
    Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**
    Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**
    Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $10,000* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, which ever occurred first, to the extent provided in 11 U.S.C. § 507 (a)(4).

☐ **Contributions to employee benefit plans**
    Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

☐ **Certain farmers and fishermen**
    Claims of certain farmers and fishermen, up to $4,925* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**
    Claims of individuals up to $2,225* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(7).

☐ **Taxes and certain other debts owed to governmental units**
    Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C § 507(a)(8).

☐ **Commitments to maintain the capital of an insured depository institution**
    Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507(a)(9).

☐ **Claims for death or personal injury while debtor was intoxicated**
    Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance. 11 U.S.C. § 507(a)(10).

\*Amounts are subject to adjustment on April 1, 2007, and every three years thereafter with respect to cases commenced on or after the date of adjustment.
                               __0__    continuation sheets attached

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                             Best Case Bankruptcy

Form B6F
(10/05)

In re __TERRI ANN FLASHA__                                        Case No. __4:06-bk-00108__
                                    Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C.§112; Fed.R.Bankr.P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community maybe liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐ Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W J | C | | | | | |
| Account No. | | | | C | Business Debt | X | | X | |
| Albar Precious Metal Refining, Inc. c/o Holden Brodman PLC 2425 E. Camelback Road, #1050 Phoenix, AZ 85016 | | | | | | | | | 41,660.00 |
| Account No. **PX49GZ4** | X | | | C | Cellphone | | | | |
| All Tel POB 79029 Phoenix, AZ 85062 | | | | | | | | | 493.28 |
| Account No. **xxxx-xxxxxx-x4007** | X | | | C | Credit card purchases | | | | |
| American Express Box 0001 Los Angeles, CA 90096-0001 | | | | | | | | | 6,511.08 |
| Account No. **xxxxxxxxxxxxxx2202** | X | | | C | Opened 4/01/83 CreditCard | | | | |
| AMEX Po Box 297871 Fort Lauderdale, FL 33329 | | | | | | | | | 6,096.00 |

__8__ continuation sheets attached

Subtotal
(Total of this page)                                            54,760.36

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                    S/N:29427-060206    Best Case Bankruptcy

Form B6F - Cont.
(10/05)

In re **TERRI ANN FLASHA**                                    Case No. __4:06-bk-00108__
                                    Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. xxxxxxxxxxxxxx8331 | | | Opened 7/13/01 Last Active 1/01/06 CreditCard | | | | |
| AMEX Po Box 297871 Fort Lauderdale, FL 33329 | X | C | | | | | 5,065.00 |
| Account No. xxxxxxxxxxxxxx2202 | | | Opened 4/01/83 CreditCard | | | | |
| AMEX Po Box 297871 Fort Lauderdale, FL 33329 | X | C | | | | | 237.00 |
| Account No. xxxxxxxx4002 | | | Opened 8/29/96 Last Active 11/09/05 CreditCard | | | | |
| Associates/Citibank Po Box 6003 Hagerstown, MD 21747 | X | C | | | | | 3,863.00 |
| Account No. BAN550 | | | Medical Bills | | | | |
| Banner Baywood Surgi Center 4335 N. Wells Fargo Scottsdale, AZ 85251 | X | C | | | | | 89.36 |
| Account No. xx2544 | | | Opened 8/01/83 Last Active 12/21/05 CreditCard | | | | |
| CCB NA Pob 5010 Room 1242 Concord, CA 94524 | X | C | | | | | 109.00 |

Sheet no. __1__ of __8__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)          9,363.36

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037          Best Case Bankruptcy

Form B6F - Cont.
(10/05)

In re **TERRI ANN FLASHA**                     Case No.   **4:06-bk-00108**

_____,
Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. **xxxxxxxx3099**<br><br>Chase<br>800 Brooksedge Blv<br>Westerville, OH 43081 | X | C | Opened 11/01/01  Last Active  9/01/05 CreditCard | | | | 17,343.00 |
| Account No. **xxxx-xxxx-xxxx-0065**<br><br>Chase<br>POB 94014<br>Palatine, IL 60094-4014 | X | C | Credit card purchases | | | | 4,582.06 |
| Account No. **xxxxxxxxxxxx8253**<br><br>Chase<br>POB 94014<br>Palatine, IL 60094-4014 | - | | Credit card purchases | | | | 147.89 |
| Account No. **xxxxxx0018**<br><br>Chevron/Texaco<br>POB 2001<br>Concord, CA 94529 | X | C | Credit card purchases | | | | 131.73 |
| Account No. **xxxxxxxx4649**<br><br>Citi<br>Pob 6241<br>Sioux Falls, SD 57117 | X | C | Opened 10/01/94  Last Active 10/01/05 CreditCard | | | | 21,572.00 |

Sheet no. __2__ of __8__ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal (Total of this page)     **43,776.68**

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037        Best Case Bankruptcy

Form B6F - Cont.
(10/05)

In re   **TERRI ANN FLASHA**                                    Case No.   **4:06-bk-00108**
_____
                           Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W J | C | | | | | |
| Account No. **xxxx-xxxx-xxxx-2438** | | | | | **Credit card purchases** | | | | |
| **CITI** **POB 6412** **The Lakes, NV 88901-6412** | X | C | | | | | | | **3,585.55** |
| Account No. **x1751** | | | | | **Opened  3/01/00  Last Active 10/01/05** **CreditCard** | | | | |
| **Citi-Shell** **P O Box 15687** **Wilmington, DE 19850** | X | C | | | | | | | **308.00** |
| Account No. | | | | | **Community Debts** | | | | |
| **David Flasha** **101 Aguirre Street** **Legasipi Village, Makati City** **Manila, Philippines** | - | | | | | X | X | X | **Unknown** |
| Account No. **Dxx2159** | | | | | **Medical Bills** | | | | |
| **Digestive Disease Consult** **6020 E. Arbor Ave** **#401** **Mesa, AZ 85206** | X | C | | | | | | | **192.80** |
| Account No. **xxxx45-00** | | | | | **Medical Bills** | | | | |
| **East Valley Endoscopy** **6020 E. Arbor Ave, #105** **Mesa, AZ 85206** | X | C | | | | | | | **117.50** |

Sheet no. __3__ of __8__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)                          **4,203.85**

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037          Best Case Bankruptcy

Form B6F - Cont.
(10/05)

In re **TERRI ANN FLASHA**                     Case No.  **4:06-bk-00108**
_____
Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. xxxxxxxx4100<br><br>Exxon Mobile<br>Po Box 981400<br>El Paso, TX 79998 | X | C | Opened 7/30/86 Last Active 12/23/05<br>ChargeAccount | | | | 129.00 |
| Account No. xxxxxxxx1318<br><br>GEMB/Dillards<br>Po Box 981400<br>El Paso, TX 79998 | X | C | Opened 12/01/94 Last Active 10/27/05<br>ChargeAccount | | | | 776.00 |
| Account No. xxxx-xxxx-xxxx-3625<br><br>GM Card<br>POB 80082<br>Salinas, CA 93912-0082 | X | C | Credit card purchases | | | | 5,796.64 |
| Account No.<br><br>H & E Equipment Services, LLC<br>c/o Beaugureau, Zukowski & Hancock<br>2111 E. Highland Ave., #255<br>Phoenix, AZ 85016 | X | C | Business Debt | | | | 68,696.88 |
| Account No. xxxxxxxxxxxx9850<br><br>Home Depot<br>c/o Pro Consulting Serv<br>POB 66768<br>Houston, TX 77266-6768 | X | C | Credit card purchases | | | | 319.88 |

Sheet no. __4__ of __8__ sheets attached to Schedule of       Subtotal
Creditors Holding Unsecured Nonpriority Claims              (Total of this page)      75,718.40

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                     Best Case Bankruptcy

Form B6F - Cont.
(10/05)

In re __TERRI ANN FLASHA__                                    Case No. __4:06-bk-00108__
_____,
Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W J | C | | | | | |
| Account No. xxxxxxxx1468 <br><br> HSBC NV <br> Pob 98706 <br> Las Vegas, NV 89193 | X | | C | | Opened 10/20/93 Last Active 10/01/05 <br> CreditCard | | | | 5,496.00 |
| Account No. xxxxxxxx0086 <br><br> HSBC NV <br> Pob 98706 <br> Las Vegas, NV 89193 | X | | C | | Opened 5/31/88 Last Active 10/24/05 <br> CreditCard | | | | 4,746.00 |
| Account No. 0776 <br><br> Monogram Bank N America <br> Po Box 17054 <br> Wilmington, DE 19884 | X | | C | | Opened 11/05/01 Last Active 10/25/05 <br> CreditCard | | | | 12,787.00 |
| Account No. 4562 <br><br> Monogram Bank N America <br> Po Box 17054 <br> Wilmington, DE 19884 | X | | C | | Opened 5/16/95 Last Active 10/21/05 <br> CreditCard | | | | 1,051.00 |
| Account No. xxxxxxxxxxxx0232 <br><br> Neiman Marcus <br> Po Box 729080 <br> Dallas, TX 75372 | X | | C | | Opened 1/01/96 Last Active 10/28/05 <br> ChargeAccount | | | | 991.00 |

Sheet no. _5_ of _8_ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)                          25,071.00

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                          Best Case Bankruptcy

Form B6F - Cont.
(10/05)

In re    **TERRI ANN FLASHA**                                                    Case No.    **4:06-bk-00108**
                                                                        Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. **x2701** | | | **Guarantee of Corporate Debt** | | | | |
| **Netbank Business Finance** POB 2597 Columbia, SC 29202 | X | C | | | | | 19,000.00 |
| Account No. **4569** | | | **Opened 12/22/85 Last Active 10/25/05 ChargeAccount** | | | | |
| **Nordstrom FSB** Po Box 6555 Englewood, CO 80155 | X | C | | | | | 5,117.00 |
| Account No. **PSI xx6450** | | | **Medical Bills** | | | | |
| **Pathology Specialists, AZ** POB 42210 Phoenix, AZ | X | J | | | | | 79.75 |
| Account No. | | | **Attorney Fees** | | | | |
| **Peter Strojnik, P.C.** 3030 N. Central Avenue Suite 1401 Phoenix, AZ 85012-2712 | X | C | | | | X | 32,859.20 |
| Account No. | | | **Business Debt** | | | | |
| **R. Wales & Son** Van Dinter & Assoc 28069 Diaz Rd, #E Temecula, CA 92590 | X | - | | | | | 15,974.00 |

Sheet no. __6__ of __8__ sheets attached to Schedule of                   Subtotal                  73,029.95
Creditors Holding Unsecured Nonpriority Claims                    (Total of this page)

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                              Best Case Bankruptcy

In re  **TERRI ANN FLASHA**                                      Case No.  **4:06-bk-00108**
_____,
                              Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. <br><br> Randy Nussbaum <br> Jaburg & Wilk, P.C. <br> 14500 N. Northsight Bvld, #116 <br> Scottsdale, AZ 85260 | X | C | Attorney Fees | | | | Unknown |
| Account No. x7710 <br><br> Republic Lsg <br> 100 Executive Ctr Dr Suite 101 <br> Columbia, SC 29210 | X | C | Opened 11/01/02 Last Active 6/01/05 <br> Lease | | | | 18,455.00 |
| Account No. 8804 <br><br> Southeast Valley OBGYN <br> 1134 E. University Drive <br> #103 <br> Mesa, AZ 85203 | X | C | Medical Bills | | | | 292.00 |
| Account No. xxxxx4605 <br><br> Sprint <br> POB 79255 <br> City Of Industry, CA 91716 | X | C | Telephone | | | | 400.50 |
| Account No. xxxxx4227 <br><br> SST <br> POB 801997 <br> Kansas City, MO 64180 | X | C | Repo'd Vehicle | | | | Unknown |

Sheet no. __7__ of __8__ sheets attached to Schedule of                       Subtotal                   **19,147.50**
Creditors Holding Unsecured Nonpriority Claims                         (Total of this page)

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

Form B6F - Cont.
(10/05)

In re  **TERRI ANN FLASHA**                                    Case No. __4:06-bk-00108__
                                              ,
                              Debtor

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. x8848 | | | Business Debt | | | | |
| US Filter POB 1746 Mandeville, LA 70470 | X | C | | | | | 656.27 |
| Account No. | | | Credit card purchases | | | | |
| Waste Mgmt POB 723115 Atlanta, GA 31139 | X | C | | | | | 810.89 |
| Account No. xxx8684 | | | Overdrafts | | | | |
| Wells Fargo Bank States Recovery System POB 2860 Rancho Cordova, CA 95742 | X | C | | | | | 1,135.74 |
| Account No. xxxxxxxxx0645 | | | Business Debt | | | | |
| Wells Fargo MC POB 7397 San Francisco, CA 94120-7397 | X | H | | | | X | 20,000.00 |
| Account No. xxxxxxxxxx7667 | | | Opened 3/14/04 Last Active 10/26/05 ChargeAccount | | | | |
| WFFinance 2853 S Sossaman Rd Ste A Mesa, AZ 85212 | X | C | | | | | 472.00 |

Sheet no. __8__ of __8__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

| | |
|---|---|
| Subtotal (Total of this page) | 23,074.90 |
| Total (Report on Summary of Schedules) | 328,146.00 |

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037          Best Case Bankruptcy

Form B6G
(10/05)

In re     **TERRI ANN FLASHA**                                    Case No.     **4:06-bk-00108**
_____
Debtor

# SCHEDULE G. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser", "Agent", etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. § 112; Fed.R. Bankr. P. 1007(m).

■ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
|---|---|
| | |

**0**    continuation sheets attached to Schedule of Executory Contracts and Unexpired Leases

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                              Best Case Bankruptcy



When recorded mail to:

DAOWD FLASAN
399 W. VIA DE ARBOLES
Queen Creek Az
85242

**OFFICIAL RECORDS OF
PINAL COUNTY RECORDER
LAURA DEAN-LYTLE**

DATE/TIME: 10/21/05 0911
FEE:                    $13.00
PAGES:                       2
FEE NUMBER:   2005-143946

(The above space reserved for recording information)

## CAPTION HEADING

PROPERTY LIEN

DO NOT DISCARD THIS PAGE.  THIS COVER PAGE IS RECORDED AS PART
OF YOUR DOCUMENT.  THE CERTIFICATE OF RECORDATION WITH THE FEE
NUMBER IN THE UPPER RIGHT CORNER IS THE PERMANENT REFERENCE
NUMBER OF THIS DOCUMENT IN THE PINAL COUNTY RECORDER'S OFFICE.

Form RE-49

# EXHIBIT "B"

PROPERTY LIEN

    This lien, in the amount of Sixty Thousand Dollars ($60,000) is being levied against the marital property of David & Terri Flasha and DT Trust at 399 W. Via De Arboles, Queen Creek, AZ 85242 as security for a personal loan from Harry & Opal Merrifield, evidenced by a Promissory Note dated March 22, 2005 signed by the above referenced parties.

This lien is dated the 15th day of September, 2005

_David Flasha_

STATE OF ARIZONA      )ss:
COUNTY OF MARICOPA  Pinal  )

JAN DENISE CONNER
Notary Public · Arizona
Pinal County
My Commission Expires
March 9, 2008

Subscribed, sworn to and acknowledged before me by _David Flasha_

The Principal, and subscribed and sworn to before me by _Jan Denise Conner_
Witness, this _20th_ day of _October 2005_

_Jan Denise Conner_
Notary Public
My Commission Expires March 9, 2005

When recorded mail to:

DAVID PLATNO
399 W. VIA DE ARBOLES
Queen Creek, Az
85242



**OFFICIAL RECORDS OF
PINAL COUNTY RECORDER
LAURA DEAN-LYTLE**

DATE/TIME: 10/21/05 0911
FEE:                    $13.00
PAGES:                       2
FEE NUMBER:  2005-143947

(The above space reserved for recording information)

## CAPTION HEADING

PROPERTY LIEN

DO NOT DISCARD THIS PAGE.  THIS COVER PAGE IS RECORDED AS PART
OF YOUR DOCUMENT.  THE CERTIFICATE OF RECORDATION WITH THE FEE
NUMBER IN THE UPPER RIGHT CORNER IS THE PERMANENT REFERENCE
NUMBER OF THIS DOCUMENT IN THE PINAL COUNTY RECORDER'S OFFICE.

Form RE-49

# EXHIBIT "C"

# PROPERTY LIEN

This lien, in the amount of Ten Thousand Dollars ($10,000) is being levied against the marital property of David & Terri Flasha and DT Trust at 399 W. Via De Arboles, Queen Creek, AZ 85242 as security for a personal loan from Paul Flasha of Whitecourt, Alberta as evidenced by a Promissory Note dated October 15, 2005 signed by the above referenced parties.

This lien is dated the 19th day of October, 2005

_David Flasha_

STATE OF ARIZONA     )ss:
COUNTY OF ~~MARICOPA~~ Pinal )



Subscribed, sworn to and acknowledged before me by _David Flasha_

The Principal, and subscribed and sworn to before me by _Jan Denise Conner_
Witness, this _20th_ day of _October 2005_

_Jan Denise Conner_
Notary Public
My commission Expires March 9 2008

David Flasha
399 W. Via De Arboles
Queen Creek, Az 85242

JR



OFFICIAL RECORDS OF
PINAL COUNTY RECORDER
LAURA DEAN-LYTLE

DATE/TIME: 11/14/05 1142
FEE:                $13.00
PAGES:                   1
FEE NUMBER:  2005-156601

## PROPERTY LIEN

This lien in the amount of Six thousand ($6,000) is being levied against the marital property of David and Terri Flasha and DT Trust at 399 West Via De Arboles, Queen Creek, Az. This security is for the above mentioned loan from Doris Flasha of Whitecourt, Alberta as evidenced by a Promissory note dated November 9th, 2005 signed by David and Terri Flasha.

David Flasha

STATE OF ARIZONA            )ss:
COUNTY OF PINAL            )

Subscribed, sworn to and acknowledged before me by David Flasha.

The principle, subscribed and sworn to me  J W Pickinpaugh
This 11th day of November, 2005

Notary Public

NOTARY PUBLIC
STATE OF ARIZONA
Maricopa County
J.W. PICKINPAUGH
My Commission Expires 04/15/08

My commission expires 4-15-2008

EXHIBIT "D"

Dawn Flasha
399 W Via De Arboles
Queen Creek, Az 85242

OR



OFFICIAL RECORDS OF
PINAL COUNTY RECORDER
LAURA DEAN-LYTLE

DATE/TIME: 11/14/05 1142
FEE:                    $13.00
PAGES:                       1
FEE NUMBER: 2005-156602

## PROPERTY LIEN

This lien in the amount of Eight thousand ($8,000) is being levied against the marital property of David and Terri Flasha and DT Trust at 399 West Via De Arboles, Queen Creek, Az. This security is for the above mentioned loan from Steven Flasha of Whitecourt, Alberta as evidenced by a Promissory note dated November 9th, 2005 signed by David and Terri Flasha.

David Flasha

STATE OF ARIZONA            )ss:
COUNTY OF PINAL            )

Subscribed, sworn to and acknowledged before me by David Flasha.

The principle, subscribed and sworn to me _J.W. Pickinpaugh_
This 11th day of November, 2005

NOTARY PUBLIC
STATE OF ARIZONA
Maricopa County
J.W. PICKINPAUGH
My Commission Expires 04/15/08

Notary Public

My commission expires H-15-2008

## EXHIBIT "E"



David Flasha
399 W. Via De Arboles
Queen Creek, Az 85242



**OFFICIAL RECORDS OF
PINAL COUNTY RECORDER
LAURA DEAN-LYTLE**

DATE/TIME: 11/14/05 1142
FEE:                              $13.00
PAGES:                                 1
FEE NUMBER:   2005-156603

# PROPERTY LIEN

This lien in the amount of Twelve thousand ($12,000) is being levied against the marital property of David and Terri Flasha and DT Trust at 399 West Via De Arboles, Queen Creek, Az. This security is for the above mentioned loan from Harry and Opal Merrifield of Mesa Arizona as evidenced by a Promissory note dated November 9th, 2005 signed by David and Terri Flasha.

David Flasha

STATE OF ARIZONA                )ss:
COUNTY OF PINAL                 )

Subscribed, sworn to and acknowledged before me by David Flasha.

The principle, subscribed and sworn to me _J W Pickinpaugh_
This 11th day of November, 2005

Notary Public

NOTARY PUBLIC
STATE OF ARIZONA
Maricopa County
J.W. PICKINPAUGH
My Commission Expires 04/15/06

My commission expires _4-15-2008_

# EXHIBIT "F"

Thomas Kummer, Esq.
*Pro Hac Vice*
2164 Siesta Avenue
Las Vegas, Nevada 89109
Telephone: 1-775-338-3705
Facsimile: 1-509-696-4871
e-mail: reno4829@aol.com
Attorney for Plaintiffs

FILED ___ LODGED
___ RECEIVED ___ COPY

FEB 2 8 2005

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ B DEPUTY

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

PGM TECHNOLOGIES, INC., a) 
Delaware Corporation; GITA, LLC, an) 
Arizona Limited Liability Company;) 
PETER STROJNIK, P.C., an Arizona) 
Professional Corporation; UNKNOWN) 
VICTIMS I-XXX; )

                         Plaintiffs,)

    vs. )

CAN PAY MINING CO., INC. and )
Arizona Corporation; DAVID AND )
TERRI FLASHA, Husband and Wife; )
DT LIVING TRUST DATED JANUARY )
16, 2003, David P. Flasha and Terri A. )
Flasha, co-trustees David Flasha Trustee; )
ABC persons and entities I-X, )

                        Defendants. )
                               )
                               )
                               )

NO. CV '05 0637 PHX ROS

**VERIFIED COMPLAINT**

**Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968**

**Pattern of Unlawful Activity in Violation of State Statute A.R.S. 13-2314.04**

**Common Law Fraud**

**Misrepresentation**

**Concealment**

**Breach of Contract**

## THE PARTIES, JURISDICTION AND VENUE

1. Plaintiff PGM TECHNOLOGIES, INC. ("PGM") is a Delaware Corporation.

2. Plaintiff GITA, L.L.C. ("GITA") is an Arizona Limited Liability Company.

3. Plaintiff PETER STROJNIK, P.C. is an Arizona Professional Corporation.

# EXHIBIT "F"

4. Fictitiously named Plaintiffs are persons and entities against whom Defendants have committed the same type of wrong alleged by the named Plaintiffs. When the names of all of the fictitiously named Plaintiffs have been ascertained, their true names shall be seasonably amended.

5. Defendant CAN PAY MINING CO., INC. ("Can Pay") is an Arizona Corporation authorized to and conducting business in the State of Arizona.

6. Defendant DAVID FLASHA is a resident of the State of Arizona and a citizen of the Country of Canada. Flasha is the president of Can Pay.

7. Defendant TERRI FLASHA is a United States Citizen and a resident of the State of Arizona. Terri Flasha is the secretary and the statutory agent for Can Pay. Terri Flasha is a spouse of David Flasha. David and Terri Flasha are hereto referred jointly as "Flasha" unless the context requires otherwise.

8. Flasha and Can Pay are each other's alter ego.

9. David Flasha and Terri Flasha committed the acts complained of herein in their capacity as husband and wife, rendering the Flasha marital community liable for their individual acts.

10. DT LIVING TRUST DATED JANUARY 16, 2003, David P. Flasha and Terri A. Flasha, co-trustees, is a trust that has benefited by the acts of Can Pay and Flasha alleged herein either directly or through the creation by Flasha of numerous entities including,

-2-

without limitation, Can Pay Mining 2004, L.L.C.; Titan Management, L.L.C.; and Can Pay Processing, L.L.C.

11. David Flasha and Terri Flasha committed the acts complained of herein individually and / or through the vehicle of their corporation Can Pay, Can Pay Mining 2004, L.L.C.; Titan Management, L.L.C.; Can Pay Processing, L.L.C. and DT Living Trust.

12. The amount of controversy exceeds $75,000.00.

13. The United States District Court of the State of Arizona has jurisdiction over this matter by virtue of U.S.C. 28-1331 (federal question) and 28-1332 (diversity of citizenship).

14. Venue is proper pursuant to 28 U.S.C. 1391 for the reason that all defendants reside in the State of Arizona. Additionally, a substantial part of the acts and omissions complained of herein occurred in the State of Arizona.

15. By jurisdictional requirement, a copy of this Verified Complaint, once issued, shall be forwarded to the Honorable Terry Goddard, Office of the Attorney General, 1275 West Washington, Phoenix, Arizona 85007.

## GENERAL ALLEGATIONS

16. Plaintiffs are victims of Flasha's and Can Pay's frauds, unlawful acts and/or a pattern of unlawful activity. Flasha's and Can Pay's frauds, unlawful acts and/or a pattern of unlawful activity demonstrate a substantial similarity in purposes, results, participants,

-3-

victims and/or methods of commission and interrelation marked by distinguishing characteristics with respect to each of the named Plaintiffs.

17. During the times relevant to the allegations of this Verified Complaint, Flasha and Can Pay have held themselves out as having specialized knowledge in the area of mining, ore processing, ore extraction, and treasure location.

18. During the times relevant to the allegations of this Verified Complaint, Flasha and Can Pay have prayed on victims who are motivated by gold and treasure.

19. Flasha's and Can Pay's common distinguishing characteristics with respect to each of the victims are marked by representations by Flasha and Can Pay that Flasha and Can Pay possess, own and hold specialized technologies and processes for (1) recovering larger amounts of gold and precious metals from existing ore (the "Flasha Process"); and (2) locating gold and silver treasure at a distance both on the ground and underground (the "Flasha Technology").

20. The representation regarding the specialized technology for the recovery of gold and precious metals is directed toward those victims who already possess ore that they believe may contain precious metals.

21. The representation regarding the specialized technology for the location of treasure is made indiscriminately to any potential victim with money to pay.

22. Flasha and Can Pay do not own any specialized technologies and processes for (1) recovering larger amounts of gold and precious metals from existing ore; and (2) for

-4-

locating locate gold and silver treasure at a distance both on the ground and underground.

23. Flasha and Can Pay obtain money and property from victims by means of false or fraudulent pretenses, representations, and/or promises regarding the ownership of and the abilities of the "Flasha Process" and/or the "Flasha Technology".

24. In circumstances involving the Plaintiffs herein and other victims, Flasha's and Can Pay's scheme involves an offer by Flasha and Can Pay to license, transfer or grant the "Flasha Process" or the "Flasha Technology" to a victim in exchange for cash, valuable services, and other property.

25. Flasha and Can Pay use the "Flasha Process" and the "Flasha Technology" to induce victims to purchase from Flasha and Can Pay goods and equipment from Flasha and Can Pay that either (1) the victim does not need; and/or (2) that are sold at inflated prices.

### *Distinguishing Characteristics Of The Use Of The "Flasha Process" In Defrauding Flasha's And Can Pay's Victims*

26. Can Pay and Flasha are and have been during the periods relevant to this Verified Complaint in the business of processing precious metals ore for clients.

27. Can Pay and Flasha hold themselves out to clients as having specialized knowledge in the following areas:

> ➢ Processing of precious metals ore;

> ➢ Design and set up of ore processing facilities;

-5-

➤ Equipment needed in the processing of precious metals ore.

28. Can Pay and Flasha initially process a small amount of client ore from its original form to a concentrate, or "precipitant". During the process, Can Pay and Flasha add a chemical compound referred to as "flux". Flux aids in the chemical process to form the precipitant.

29. Flasha and Can Pay have exclusive access to the flux during its preparation.

30. The preparation of the flux involves the addition of a predetermined amount of silver to the flux to act as a catalyst.

31. In addition to adding the predetermined amount of the silver catalyst to the flux, Flasha and Can Pay add additional silver and other precious metals, including gold and platinum group metals to the flux.

32. The precious metals enriched flux is then added to the ore for processing. The enriched flux is hereinafter referred to as "Spikes Flux"

33. Once Can Pay and Flasha have processed the ore to form the precipitant, the precipitant is sent to an assayer.

34. The assayer receives the precipitants that contain not only the precious metals from the precious metals ore, but also the precious metals from the Spiked Flux.

35. The assayer then assays the precipitant and issues an assay report.

36. The assay report discloses the amount of precious metals within the precipitant.

-6-

37. The assay does not accurately reflect the contents of the precious metals from the ore itself because the infusion of the Spiked Flux causes the assay report to disclose not only the precious metals from the ore, but also the precious metals from the Spiked Flux.

38. Flasha submits the assay report to the client as proof of the content of precious metals in the client ore.

39. The client is misled into believing that the client ore contains greater concentrations of the precious metals in the client ore than actually exist.

40. From the assay report, the client can calculate the amount of the precious metals contained in a ton of ore, and from that, the value of the ore body belonging to the client.

41. If the assay report shows significant enough amounts of precious metals to warrant further processing, the client is encouraged to have Can Pay and Flasha process additional ore.

42. Can Pay and Flasha relate to the client that the reason for the high concentration of precious metals in client's ore is the use of the "Flasha Process".

43. The true reason for the high assay reports is that the flux used in the processing has been spiked by Flasha and Can Pay.

44. On the basis of the false assay readings based on the infusion of Spiked Flux, client is encouraged to hire Flasha and Can Pay to process larger amounts of ore.

-7-

45. Can Pay and Flasha relate to the client that the processing of a large amount of client ore would require a large amount of silver additive.

46. The client must pay Can Pay and Flasha in advance for the silver additive.

47. With some clients, Flasha also requires a purchase of equipment at prices set by Flasha.

48. In reliance on Can Pay's and Flasha's representations that the recovery of precious metals from the client ore is caused by the Flasha Process, and by Flasha's and Can Pay's concealment of the use of Spiked Flux to achieve the assay results, a client pays for the silver additive and any additional charges for equipment as required by Can Pay and Flasha.

49. Once the additional moneys have been paid by the client, Can Pay and Flasha process additional ore for the client.

50. On many occasions the additional ore does not yield the results purportedly achieved by Can Pay and Flasha relative to the initial smaller sample, nor does the processing recover all of the silver additive.

51. As a result of the much smaller yield than that calculated on the basis of the initial assay, the client is economically harmed and damaged in two distinct manners: First, by losing the silver additive to Flasha and Can Pay; and, Second, by wasting the processing fee to Can Pay and Flasha.

-8-

52. Flasha has been heard stating that he can show a high concentrate of precious metals from a pile of cow dung.

53. When Can Pay's and Flasha's clients confront Can Pay and Flasha regarding the fact that the larger body of ore did not yield the results indicated by the initial assay, nor did it recover the silver additive, Can Pay and Flasha blame the results on the assayer, the trucker, the refiner and/or the client.

54. The series of statements made by Flasha and Can Pay in dealings with their victims include, either individually or in the aggregate, the following:

    a. That Flasha is an expert in the field of processing of precious metals ores.

    b. That Flasha is an expert in the design and set up of ore processing facilities.

    c. That Flasha is an expert in equipment needed in the processing of precious metals ore.

    d. That Flasha is the owner of a specialized, highly secret and extremely valuable precious metals recovery process, the "Flasha Process".

    e. That the "Flasha Process" can recover significantly greater yields from ore than other processes used in the industry.

    f. That the "Flasha Process" involves the addition of a silver catalyst to the ore during the processing of the ore.

    g. That the "Flasha Process" utilized the silver catalyst to extract precious metals that other processes could not extract.

-9-

h. That the entire silver catalyst is recoverable in addition to the recovery of the precious metals in the native ore.

55. During the course of inducing a client to deal with Flasha and Can Pay, Flasha and Can Pay do not relate to a client any of the following:

a. That Flasha and Can pay do not own and are not aware of any specialized, highly secret and extremely valuable precious metals recovery process.

b. That Flasha had developed a scam with respect to Flasha and Can Pay clients whereby:

   i. Flasha would solicit owners of ore to hire Flasha and Can Pay for the purposes of processing such ore using the "Flasha Process".

   ii. Owners of ore would provide Flasha with small amounts of ore for processing from raw material to a leach concentrate referred in the business as "precipitant".

   iii. Flasha would spike the precipitant obtained from the initial ore processing with precious metals flux that Flasha himself had enriched with precious metals.

   iv. The effect of spiking the flux was to produce precipitants that would show higher concentrates of precious metals than the ore actually contained.

-10-

v. Flasha and Can Pay would have the precipitant assayed. The assay results – false by the addition of the spiked flux – would then be related to the customer.

vi. Sometimes, Flasha and Can Pay would process additional amounts of ore using the same spiking process, until the customer was ready to order Flasha and Can Pay to process a large quantity of ore.

vii. For processing a large quantity of ore, Flasha and Can Pay would demand an up-front payment for the silver catalyst.

viii. The customer would pay for the silver catalyst, Flasha and Can Pay would process the ore, but the ore would not yield the results anticipated by the client.

ix. Flasha and Can Pay would blame the loss of the silver catalyst and the lesser than anticipated results on the transportation company, the refiner, or the assayer.

x. The fact of the matter, however, was that Flasha's scam was designed to lure the customer into a large contract by Flasha's fraud in spiking the flux, and that Flasha, and not the transportation company or the refiner, stole the silver catalyst.

xi. That Flasha intended to employ the same overall scam on the victim.

-11-

c.  That Flasha was of the opinion that he can show a high concentrate of precious metals from a pile of cow dung.

56. Can Pay's and Flasha's victims who have suffered damage as a result of Can Pay's and Flasha use of the fraudulent "Flasha Process" and/or the fraudulent spiking the initial sample and/or fraudulently removing, stealing and converting the silver additive include, and/or otherwise dealing fraudulently with them are listed herein with the approximate amount of damages claimed:

| | | |
|---|---|---|
| a. | Richard Austin | $500,000 |
| b. | Hank Chamberlain | $987,000 |
| c. | Ron Deen | $40,000 |
| d. | Chris Edwards | $350,000 |
| e. | Will Adams | $Unknown |
| f. | Doug Brown | Unknown |
| g. | Marty Hackman | $200,000 |
| h. | David Harris | $1,000,000 |
| i. | Russell Jaffe | Unknown |
| j. | Cameron McQueen | $300,000 |
| k. | Jerry Nobles | $10,000 |
| l. | MCC Technology | $300,000 |
| m. | Bob "Doc" Holladay | Unknown |

| | | |
|---|---|---|
| n. | Roger Wagner | $200,000 |
| o. | Christian Weber | $200,000 |
| p. | Bill West | Unknown |
| q. | Wintergreen | Unknown |
| | **TOTAL** | **4,087,000** |

### _Flasha's And Can Pay's Method Of Praying On Victims Through The Use Of "Flasha Technology"_

57. Flasha and Can Pay are and have been during the periods relevant to this Verified Complaint in the business of selling information regarding the location of old Spanish treasures.

58. Can Pay and Flasha hold themselves out to clients as having specialized knowledge in the location and recovery of Spanish treasure.

59. Flasha's and Can Pay's method of selling and/or offering for sale interests in Spanish Treasure treasures involves the following common elements:

a. Flasha and Can Pay initially entice a victim with representations that "Flasha Technology" has the ability to detect gold, silver, and other precious metals at a distance of a mile or more.

b. Flasha and Can Pay entice the victims with representations that "Flasha Technology" can detect gold treasure and other valuable minerals deep within the ground.

-13-

c. As confirmation of the truth of the "Flasha Technology", Flasha and Can Pay demonstrate to a victim an apparatus that has been identified as a molecular frequency scanner.

d. Flasha and Can Pay represent to the victim that Flasha and Can Pay own the technology with respect to the use of the molecular frequency scanner in the location of hidden treasure.

e. Can Pay and Flasha represent to the victim that they already know the location of a buried treasure, and all they need is money to excavate it.

f. Flasha and Can Pay require the victim to pay Flasha and Can Pay money in exchange for an interest in the purported treasure.

## *Flasha's And Can Pay's Dealings With PGM*

60. During early and mid 2001, Flasha and Can Pay made representations to one Edmundo Uribe and others (commonly referred to as "Uribe") that Flasha and Can Pay owned a specialized process for the extraction of precious metals from a precious metals ore, the "Flasha Process".

61. Flasha and Can Pay did not disclose to Uribe and others that "Flasha Process" involved fraudulent use of the Spiked Flux.

62. In or about March of 2001, Flasha and Can Pay demonstrated the efficiency of the "Flasha Process" to Uribe.

-14-

63. The demonstration was made on certain ore commonly referred to as the "Red Mountain Ore".

64. Uribe was present throughout the process of Red Mountain Ore using the "Flasha Process".

65. Uribe was not present during the preparation of the Spiked Flux used by Flasha and Can Pay in the processing of the Red Mountain Ore.

66. The demonstration of the efficiency of the "Flasha Process" in processing slightly less than 10 tons of the Red Mountain Ore resulted in the recovery of a precious metals bar ("doré bar"); slag; and a liquid solution.

67. The overall recovery values using the "Flasha Process", including the doré bar, the slag and the liquid solution showed the overall value of $7,623.89, or $787 per ton.

68. Flasha and Can Pay affirmed to Uribe that the recovery values for the Red Mountain Ore were $787 per ton.

69. More than 66.67% of the overall value, or in excess of $525 per ton, of the precious metals ostensibly from the Red Mountain Ore, was based on the precious metals contained in the liquid solution.

70. The values were confirmed by assay reports.

71. Flasha and Can Pay stated to Uribe that Flasha and Can Pay can achieve the results by the use of the "Flasha Process".

-15-

72. Flasha and Can Pay failed to disclose to Uribe that the "Flasha Method" employed the use of Spiked Flux.

73. Flasha and Can Pay concealed the fact that the "Flasha Method" employed the use of Spiked Flux.

74. Uribe was not aware of the fraudulent use of the Spiked Flux.

75. The results of the Red Mountain Ore were rigged ("Rigged Results")

76. Uribe and others were justified in believing the false representations of Flasha and Can Pay that resulted in Rigged Results.

77. On the basis of Rigged Results, Uribe and others agreed to incorporate a company named PGM Technologies, Inc. ("PGM")

78. Based in part upon

    a. The false representations by Flasha and Can Pay relative to the "Flasha Process"; and

    b. The fraudulent use of the Spiked Flux,

Flasha and Can Pay were offered a 26.66% interest in PGM.

79. Thereafter, Can Pay and Flasha suggested that PGM purchase various pieces of equipment from Flasha and Can Pay, all in the approximate amount of $200,000.00, for additional processing.

-16-

80. PGM, based on the representations by Flasha and Can Pay stated above, paid $200,000 to Flasha and Can Pay for the equipment Flasha and Can Pay claimed was needed for additional processing.

81. Approximately a year following the processing of the Red Mountain Ore by Flasha and Can Pay, PGM desired to obtain an independent test regarding the Red Mountain Ore from a Canadian assaying company.

82. PGM sent to the independent Canadian assayer (1) the ore sample; (2) the "Flasha Process" protocol and (3) the flux.

83. The flux sent to the Canadian assayer had been prepared by Flasha and Can Pay.

84. Upon receipt of the ore, the protocol and the flux, the independent Canadian assayer assayed the flux and determined that the flux was Spiked Flux.

85. When confronted with the fact that Flasha and Can Pay sent to the Canadian assayer Spiked Flux, Flasha responded that all that would need to be done was to deduct from the final results the amount of the precious metals that Flasha and Can Pay had spiked in to the flux.

86. Flasha appeared utterly unable to comprehend the severity of his fraud.

87. Thereafter, Uribe and PGM discovered that subsequent to Flasha's and Can Pay's agreements with PGM, Flasha and Can Pay initiated another deal relative to the Red Mountain Ore. Uribe and PGM learned that:

-17-

a. Flasha and Can Pay submitted to a Nevada Limited Liability Company ("Nevada Company") statements that the Red Mountain Ore contained precious metals worth in excess of $19,000 per ton.

b. Flasha and Can Pay made the Red Mountain Ore available to the Nevada Company.

c. Flasha and Can Pay submitted to the Nevada Company assay reports substantiating the $19,000 per ton value.

d. Flasha and Can Pay certified the assay reports indicating that the value of the Red Mountain Ore was in excess of $19,000 per ton.

e. Flasha and Can Pay agreed to take an equity interest in the Nevada Company in exchange for, *inter alia*:

    i. The use of the "Flasha Process" by the Nevada Company;

    ii. The Red Mountain Ore contract;

    iii. Purchase by the Nevada Company of Flasha and Can Pay equipment;

    iv. Purchase by the Nevada Company of certain real estate in the environs of Wikieup, Arizona.

88. Upon learning these facts, Uribe and PGM alerted the Nevada Company that a fraud may be perpetrated upon them by Flasha and Can Pay.

89. Upon learning these facts Uribe and PGM realized that they, too, had been defrauded.

-18-

90. At this time, PGM had reason to believe that Flasha and Can Pay were perpetrating a fraud upon PGM.

### Flasha's Deals With GITA

91. During the months of September and October of 2004 and prior, Flasha made contact with Peter Strojnik ("Strojnik") and Gregory Crane "(Crane").

92. Flasha made the following statements to Strojnik and Crane:

   a. That he owned the "Flasha Technology";

   b. That the use of "Flasha Technology" has resulted in the location of buried treasures;

   c. That Flasha has seen with his own eyes the treasure that he has located with the Flasha Technology through a pilot hole leading to the buried treasure;

   d. That he had a photograph of the previously found buried treasure;

   e. That he is presently aware of another buried treasure that can be found on a piece of property commonly referred to as the "Hawk Rock" property;

   f. That he was willing to transfer the rights to the "Flasha Technology" and the information relating to the location of all buried treasure to GITA in return for an interest in GITA and a $10,000.00 payment.

93. On the basis of these statements and in reliance thereon, Flasha, Strojnik and Crane entered into a Pre-Formation Agreement in anticipation of the formation of a limited liability company.

-19-

94. Pursuant to the pre-formation agreement, Flasha, Strojnik and Crane formed GITA, L.L.C. ("GITA")

95. Flasha demanded that his interest in GITA be held by DT Living Trust Dated January 16, 2003, David P. Flasha and Terri A. Flasha, co-trustees, which received a 64.04% membership interest therein.

96. Flasha contributed to GITA the "Flasha Technology" and the information regarding the location of buried treasure.

97. Flasha demanded, and was paid, $10,000.00 in cash.

98. The $10,000.00 payment to Flasha, and the membership interest extended to DT Living Trust were made on the basis of the following representations:

   a. That Flasha owned the "Flasha Technology";

   b. That the use of "Flasha Technology" has resulted in the location of buried treasures;

   c. That Flasha has seen with his own eyes the treasure that he has located with the Flasha Technology through a pilot hole leading to the buried treasure;

   d. That Flasha had a photograph of the previously found buried treasure;

   e. That Flasha was presently aware of another buried treasure that can be found on a piece of property commonly referred to as the "Hawk Rock" property;

99. GITA was justified in relaying on the representations made by Flasha.

100.  GITA did justifiably rely on the representations made by Flasha.

-20-

101. GITA agreed to purchase the Hawk Rock property, and Flasha agreed to dig out the "treasure" using the Flasha Technology.

102. Thereafter, Flasha made a request to GITA to pay the sum of $9,050.00 for a ground penetrating radar ostensibly for the use by GITA in the recovery of the Hawk Rock "treasure".

103. GITA authorized Flasha to purchase the ground penetrating radar, and Flasha ostensibly purchased the ground penetrating radar.

104. The ostensible purchase of the ground penetrating radar was authorized on the basis of the statements and representations made by Flasha and Can Pay encapsulated above.

105. GITA was unable to purchase the Hawk Rock property. Therefore, GITA demanded that Flasha return the ostensibly purchased ground penetrating radar to GITA.

106. Despite repeated demands, Flasha refused to provide the ostensibly purchased ground penetrating radar to GITA, and converted it for his own use.

107. GITA has learned and therefore alleges that:

a. Flasha never owned the "Flasha Technology";

b. Upon information and belief, the use of Technology has never resulted in the location of any buried treasure;

-21-

c. Flasha has never seen with his own eyes the treasure that Flasha claimed to have located with "Flasha Technology" through a pilot hole;

d. Flasha did not have a photograph of the previously found buried treasure;

e. Upon information and belief, there is no treasure on the "Hawk Rock" property;

## *Flasha's Sale Of Technology To The Holladay Group*

108. Following the transfer of the "Flasha Technology" and the information regarding the "buried treasure" to GITA, Flasha entered into another agreement for the transfer of the "Flasha Technology" and the digging out of the Hawk Rock "treasure" with third parties, including one Bob Holladay ("Holladay Group").

109. Pursuant to Flasha's agreement with the Holladay Group, Flasha agreed to use the "Flasha Technology" for the purpose of locating and retrieving the Hawk Rock treasure on behalf of the Holladay Group.

110. Flasha demanded and received the sum of $10,000 from the Holladay Group, and particularly one Jorth Richardson.

111. The Holladay Group and Jorth Richardson paid Flasha and Can Pay the sum of $10,000 on the basis of Flasha's representations there was a treasure buried on the Hawk Rock property.

112. In order to keep the existence of the Holladay Group agreement from the knowledge of GITA, Flasha specifically instructed the Holladay Group not to disclose the existence of the Holladay Group agreement to any person.

-22-

113. Flasha had no right to enter an agreement with the Holladay Group insofar as the "Flasha Technology" and the information regarding the Hawk Rock "treasure" had been previously sold to GITA.

### *GITA Learns Of The Fraud*

114. In December of 2004, Strojnik learned that Flasha defrauded GITA by selling the Technology and the Hank Rock Treasure to the Holladay Group.

115. Strojnik placed a telephone call to Flasha to confront Flasha about the fraud in the sale of "Flasha Technology" to third parties.

116. When confronted with the fraud, Flasha responded, "This just goes to show you that you can't trust anybody. I specifically told them [the Holladay Group] that my deal with them was confidential; I just can't believe that they told you about this".

117. Flasha's response displayed utter lack of concern or appreciation of his own fraud; Flasha's view was that the guilty parties were the people who disclosed the fraud, not the person who perpetrated the fraud.

118. On December 15, 2004, Strojnik met with Flasha to discuss these and other issues. At the breakfast meeting GITA confronted Flasha about the sale of the GITA property to the Holladay Group.

119. At the meeting, Flasha admitted the fraud to Strojnik.

120. As a result of the discovery of the fraud, Flasha authored and disseminated a fax to the Holladay Group that indicating, in relevant part:

-23-

1. When this deal [with Holladay Group] was proposed over 5 months ago, there were some very serious constrains and concerns for the security and disclosure of the information about the assets. ...
I indicated that none of this information was to be disclosed and if it were, I did not want to participate in this transaction because of the potential legal risks involved.

\*\*\*

3. Sometime during this period, a person, or persons on your side, openly discussed these items with a third party [GITA] causing great distress in a personal & professional relationship that has now ended due to information provided to him which either was a complete lie, fabrication or mis-representation of facts that did not exist on your part.

121. Following the payment of $10,000 to Flasha, Strojnik discovered that the "Flasha Technology" was old molecular frequency scanner technology that had been in public domain for decades, and that it did not belong to Flasha.

### Strojnik's Representation Of Flasha And Can Pay

122. During the period of August, 2001, to December, 2004, Strojnik represented Flasha and Can Pay in various matters of representation, including civil and criminal litigation matters ("General Representation").

123. Strojnik charged Flasha for General Representation matters at Strojnik's discount rate of $200.00 per hour.

124. In addition to General Representation, in or about November, 2003, Flasha and Can Pay requested that Strojnik represent them in contract negotiations relative to a large mining and ore processing contract with Wintergreen Metals Investors, LLC, a Nevada Limited Liability Company("Wintergreen") (The engagement with respect to

-24-

contract negotiations relative to Wintergreen is hereinafter referred to as the "Wintergreen Representation").

125. The parties agreed that Strojnik would represent Flasha at Strojnik's then regular hourly rate of $300.00 per hour.

***Future Fees For Equity Interest Proposal***

126. Initially, Strojnik charged Flasha and Can Pay for the Wintergreen Representation on hourly basis.

127. However, on or about October 20, 2004, Flasha proposed to Strojnik that Strojnik provide all future legal services relative to the Wintergreen Representation in exchange for a 10% interest in Wintergreen. From this point forward, Strojnik would act as counsel for Wintergreen, and not for Flasha, and Strojnik would not be entitled to any additional hourly fees.

128. As inducement to enter the fees-for-10% interest proposal, Flasha made and affirmed to Strojnik the following representations of fact:

a. That Flasha is an expert in the field of processing of precious metals ores.

b. That Flasha is an expert in the design and set up of ore processing facilities.

c. That Flasha is an expert in equipment needed in the processing of precious metals ore.

d. That Flasha is the owner of a specialized, highly secret and extremely valuable precious metals recovery process, the "Flasha Process".

-25-

e. That the "Flasha Process" can recover significantly greater yields from ore than other processes used in the industry.

f. That Flasha has assigned the "Flasha Process" to Wintergreen, and that if Strojnik were to accept a 10% interest in Wintergreen in lieu of future fees, Strojnik would reap great profits.

g. That Flasha had access to certain gold bearing ore commonly referred as the Red Mountain Ore, which could be purchased by Wintergreen for $200.00 per ton.

h. That applying the Flasha Process the Red Mountain Ore yielded more than $19,000.00 per ton in precious metals to Wintergreen.

i. That Flasha had the Red Mountain Ore assayed by an independent assayer who confirmed Flasha's findings with respect to the amount of precious metals present in each ton of Red Mountain Ore.

j. That Flasha had access to additional ore that would likewise yield very high precious metals yields which Wintergreen could acquire cheaply.

k. That the Flasha Process involved the addition of a silver catalyst to the ore during the processing of the ore.

l. That the Flasha Process utilized the silver catalyst to extract precious metals that other processes could not extract.

m. That the entire silver catalyst is recoverable in addition to the recovery of the precious metals in the native ore.

-26-

n. That Flasha owned approximately 350 acres of land North of Wikieup, Arizona that would be perfect for processing the ore located on the property.

o. That there was a processing plant on the property already belonging to U.S. Power Systems, Inc.

p. That Flasha was the assignee of two judgments entered in favor of Red Mountain Mining, Inc. and against U.S. Power Systems, Inc. ("Red Mountain Judgments").

q. That the Red Mountain Judgments could be executed against the U.S. Power Systems, Inc. refining plant.

129. Strojnik reasonably relied on the present statements and representations and the affirmation of previous statements and representations of fact made by Flasha.

130. In reliance on Flasha's and Can Pay's statements of fact narrated above, Strojnik accepted a 10% interest in Wintergreen in lieu of future fees incurred in the Wintergreen representation.

131. At the time Strojnik accepted Flasha's offer to exchange future fees for a 10% interest in Wintergreen, Flasha failed to disclose any of the following:

a. That Flasha did not own and was not aware of any specialized, highly secret and extremely valuable precious metals recovery process.

b. That the Red Mountain Ore would not yield in excess of $19,000.00 of precious metals per ton.

-27-

c. That the assay report for the Red Mountain Ore shown to Strojnik as proof of the value of the ore was false.

d. That Flasha's reassurances regarding the value of the Red Mountain Ore were false.

e. That the Red Mountain Ore had been previously processed by Flasha, and that Flasha could only recover $787.00 in precious metals per ton of ore.

f. That Flasha's reassurances regarding the value of the other ore proposed to be made available to Wintergreen were false.

g. That Flasha had developed a scam with respect to Flasha and Can Pay clients whereby:

    i. Flasha would solicit owners of ore to hire Flasha for the purposes of processing such ore using the "Flasha Process".

    ii. Owners of ore would provide Flasha with small amounts of ore for processing from raw material to a leach concentrate referred in the business as "precipitant" or "precip" (herein "Precips").

    iii. Flasha would spike the Precips obtained from the initial ore processing with precious metals flux that Flasha himself had enriched with precious metals.

    iv. The effect of spiking the flux was to produce Precips that would show higher concentrates of precious metals than the ore actually contained.

-28-

v.     Flasha would have the precipitant assayed. The assay results – false by the addition of the spiked flux – would then be related to the customer.

vi.     Sometimes, Flasha would process additional amounts of ore using the same spiking process, until the customer was ready to order Flasha to process a large quantity of ore.

vii.     For processing a large quantity of ore, Flasha demanded an up-front payment for the silver catalyst.

viii.     The customer would pay for the silver catalyst, Flasha would process the ore, but the ore would not yield the results anticipated by the client.

ix.     Flasha would blame the loss of the silver catalyst and the lesser than anticipated results on the transportation company, the refiner, or the assayer.

x.     The fact of the matter, however, was that Flasha's scam was designed to lure the customer into a large contract by Flasha's fraud in spiking the flux, and that Flasha, and not the transportation company or the refiner, stole the silver catalyst.

xi.     That Flasha intended to employ the same overall scam on Strojnik with the sole distinction that the scam on Strojnik involved a scam for obtaining services instead of money.

h. That Flasha did not own approximately 350 acres of land North of Wikieup, Arizona.

-29-

i. That the land North of Wikieup was not suitable for refining because it was appropriately zoned.

j. That Flasha was not the assignee of the Red Mountain Judgments.

k. That the Red Mountain Judgments could not be executed against the processing plant because the land on which the plant stands belongs to JSG, L.L.C., not U.S. Power Systems, Inc.

l. That the processing plant was not located on any land owned by U.S. Refining Systems, Inc.

m. That Flasha has been heard stating that he can show a high concentrate of precious metals from a pile of cow dung.

n. That Can Pay's and Flasha's victims ("Victims") who have suffered damage as a result of Can Pay's and Flasha use of the fraudulent "Flasha Process" and/or the fraudulent spiking the initial sample and/or fraudulently removing, stealing and converting the silver additive include, without limitation, the following:

| DEFRAUDED PERSON OR ENTITY | AMOUNT OF FRAUD |
| --- | --- |
| Bill West | Unknown |
| Cameron McQueen | $300,000 |
| Chris Edwards | $350,000 |
| Christian Weber | $200,000 |
| David Harris | $1,000,000 |
| Doug Brown | Unknown |
| Jerry Nobles | $10,000 |
| Marty Hackman | $200,000 |

–30–

| MCC Technologies | $300,000 |
|---|---|
| Richard Austin | $987,000 |
| Robert Holladay | Unknown |
| Roger Wagner | $200,000 |
| Ron Dean | $40,000 |
| Russell Jaffe | Unknown |
| Stanfield Group | Unknown |
| Will Adams | Unknown |
| **TOTAL** | **4,087,000** |

## *Strojnik's Discovery Of Flasha's And Can Pay's Fraud*

132.  In or about August of 2004, Strojnik heard from third parties that Flasha had been referring to Strojnik as Flasha's "partner". Strojnik immediately wrote a letter to Flasha to advise that Flasha should never again refer to Strojnik as a "partner". Flasha responded to Strojnik that he had not referred to Strojnik as a "partner" and that any reports to the contrary are false.

133.  On or about October 20, 2004, the Wintergreen Representation was concluded, and Strojnik became the general counsel for Wintergreen.

134.  In December of 2004, Strojnik learned that Flasha committed fraud with respect to GITA, as more fully described above.

135.  Strojnik placed a telephone call to Flasha to confront Flasha about the fraud in the sale of Technology to third parties.

136.  On December 15, 2004, Strojnik met with Flasha to discuss these and other issues. At the breakfast meeting Strojnik again confronted Flasha.

-31-

137. At the breakfast meeting, Flasha made admissions of fact that contravened his previous representations to Strojnik and others.

138. During the breakfast meeting Strojnik became convinced that Flasha and Can Pay were committing a scam on Strojnik, GITA, Wintergreen, the Holladay Group and others.

139. Strojnik terminated the meeting and withdrew, or filed for withdrawal, from further representation of Flasha and Can Pay from any and all pending General Representation matters.

140. Flasha and Can Pay are indebted to Strojnik for the following sums:

    a. $74,780.75 for General Representation; and

    b. $54,870.00 for Wintergreen Representation.

    c. Plus interest pre-judgment and post judgment interest at the highest legal rate.

**COUNT ONE**
**Racketeer Influenced and Corrupt Organizations Act (RICO)**
**18 U.S.C. §§ 1961-1968.**
(PGM Technologies)

141. Plaintiffs reallege all allegations heretofore set forth as if fully restated herein.

142. Can Pay's and Flasha's *modus operandi* as set forth above discloses a course of illegal conduct with common external organizing principle including the affairs of the entire Can Pay – Flasha enterprise, to wit: Flasha And Can Pay induce the Plaintiffs

-32-

and others similarly situated into action by promising the recovery of gold or gold treasure that does not exist.

143. The illegal acts committed by Can Pay and Flasha with respect to Plaintiffs and others similarly situated are related in that they have the same or similar purposes, results, participants, victims or methods of commission and are otherwise interrelated by distinguishing characteristics, to wit:

    a. Can Pay's and Flasha's purpose was Plaintiffs and others similarly situated to take action based on a false premise;

    b. The result of Can Pay's and Flasha's scam was to obtain money and/or services by false pretenses;

    c. The participants were always Can Pay and Flasha;

    d. The method of commission of the illegal acts involved the same act of misleading the parties relative to the existence of precious metals either in precious metals ore or as treasure;

    e. A portion of the proceeds of the scam were deposited in the name of D T Living Trust.

144. The misconduct committed by Can Pay and Flasha demonstrates a series of related predicates involving the Plaintiffs and others similarly situated extending over a substantial period of time.

-33-

145. By its very nature, Flasha's and Can Pay's misconduct projects into the future with a threat of repetition.

146. Can Pay and Flasha devised and intended to devise a scheme or artifice to defraud, or for obtaining money, property and/or services by means of false or fraudulent pretenses, representations, or promises, as more fully described above, and transmitted or caused to be transmitted by means of communication in interstate or foreign commerce, any writings and/or signs and/or signals and/or pictures and/or sounds for the purpose of executing such scheme or artifice.

147. Can Pay and Flasha devised and intended to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, and used the United States Mail Service in their scheme, including depositing matters or things to be sent or delivered by the Postal Service, and/or deposited and/or caused to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, and/or took or received therefrom, any such matter or thing, and/or knowingly caused to be delivered by mail or such carrier according to the direction thereon, and/or at the place at which it is directed to be delivered by the person to whom it is addressed.

148. Can Pay's and Flasha's *modus operandi* discloses a course of illegal conduct with common external organizing principle including the affairs of the entire Can Pay – Flasha ore processing enterprise.

-34-

149. Flasha and Can Pay committed a scheme and artifice to defraud PGM through the commission of frauds, misrepresentations, omissions, and concealments hereinabove set forth.

150. PGM has been damages to their property and services as a direct and consequential result of Flasha's and Can Pay's commission of the schemes and artifices alleged above.

151. Can Pay's and Flasha's illegal, unlawful and fraudulent conduct is indictable under the provisions of Title 18 of the United States Code as follows:

    a. U.S.C. §18-1341 relating to mail fraud;

    b. U.S.C. §18-1343 relating to wire fraud.

152. DT Living Trust is the beneficiary of Can Pay's and Flasha's unlawful activities.

WHEREFORE, PGM prays for relief as follows:

A. For damages in an amount equal to compensate Plaintiff for the damages caused by Defendants' pattern of unlawful activities;

B. Trebling said damages pursuant to statute;

C. Enjoining Defendants from committing further unlawful acts in violation of statute;

D. Piercing the veil of D T Living Trust to reach the fruits of Can Pay's and Flasha's unlawful activities;

E. Granting such other and further relief as may be appropriate.

-35-

# COUNT TWO
**Racketeer Influenced and Corrupt Organizations Act (RICO)**
**18 U.S.C. §§ 1961-1968.**
(GITA, L.L.C.)

153.   Plaintiffs reallege all allegations heretofore set forth as if fully restated herein.

154.   Can Pay's and Flasha's *modus operandi* as set forth above discloses a course of illegal conduct with common external organizing principle including the affairs of the entire Can Pay – Flasha enterprise, to wit:  Flasha And Can Pay induce the Plaintiffs and others similarly situated into action by promising the recovery of gold or gold treasure that does not exist.

155.   The illegal acts committed by Can Pay and Flasha with respect to Plaintiffs and others similarly situated are related in that they have the same or similar purposes, results, participants, victims or methods of commission and are otherwise interrelated by distinguishing characteristics, to wit:

   a.  Can Pay's and Flasha's purpose was Plaintiffs and others similarly situated to take action based on a false premise;

   b.  The result of Can Pay's and Flasha's scam was to obtain money and/or services by false pretenses;

   c.  The participants were always Can Pay and Flasha;

-36-

d. The method of commission of the illegal acts involved the same act of misleading the parties relative to the existence of precious metals either in precious metals ore or as treasure;

e. A portion of the proceeds of the scam were deposited in the name of D T Living Trust.

156. The misconduct committed by Can Pay and Flasha demonstrates a series of related predicates involving the Plaintiffs and others similarly situated extending over a substantial period of time.

157. By its very nature, Flasha's and Can Pay's misconduct projects into the future with a threat of repetition.

158. Can Pay and Flasha devised and intended to devise a scheme or artifice to defraud, or for obtaining money, property and/or services by means of false or fraudulent pretenses, representations, or promises, as more fully described above, and transmitted or caused to be transmitted by means of communication in interstate or foreign commerce, any writings and/or signs and/or signals and/or pictures and/or sounds for the purpose of executing such scheme or artifice.

159. Can Pay and Flasha devised and intended to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, and used the United States Mail Service in their scheme, including depositing matters or things to be sent or delivered by the Postal Service,

-37-

and/or deposited and/or caused to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, and/or took or received therefrom, any such matter or thing, and/or knowingly caused to be delivered by mail or such carrier according to the direction thereon, and/or at the place at which it is directed to be delivered by the person to whom it is addressed.

160. Can Pay's and Flasha's *modus operandi* discloses a course of illegal conduct with common external organizing principle including the affairs of the entire Can Pay – Flasha ore processing enterprise.

161. Flasha and Can Pay committed a scheme and artifice to defraud GITA through the commission of frauds, misrepresentations, omissions, and concealments hereinabove set forth.

162. GITA has been damages to their property and services as a direct and consequential result of Flasha's and Can Pay's commission of the schemes and artifices alleged above.

163. Can Pay's and Flasha's illegal, unlawful and fraudulent conduct is indictable under the provisions of Title 18 of the United States Code as follows:

    a. U.S.C. §18-1341 relating to mail fraud;

    b. U.S.C. §18-1343 relating to wire fraud.

164. DT Living Trust is the beneficiary of Can Pay's and Flasha's unlawful activities.

WHEREFORE, GITA prays for relief as follows:

-38-

A. For damages in an amount equal to compensate Plaintiff for the damages caused by Defendants' pattern of unlawful activities;

B. Trebling said damages pursuant to statute;

C. Enjoining Defendants from committing further unlawful acts in violation of statute;

D. Piercing the veil of D T Living Trust to reach the fruits of Can Pay's and Flasha's unlawful activities;

E. Granting such other and further relief as may be appropriate.

## COUNT THREE
### Racketeer Influenced and Corrupt Organizations Act (RICO)
### 18 U.S.C. §§ 1961-1968.
(Strojnik)

165. Plaintiffs reallege all allegations heretofore set forth as if fully restated herein.

166. Can Pay's and Flasha's *modus operandi* as set forth above discloses a course of illegal conduct with common external organizing principle including the affairs of the entire Can Pay – Flasha enterprise, to wit: Flasha And Can Pay induce the Plaintiffs and others similarly situated into action by promising the recovery of gold or gold treasure that does not exist.

167. The illegal acts committed by Can Pay and Flasha with respect to Plaintiffs and others similarly situated are related in that they have the same or similar purposes,

-39-

results, participants, victims or methods of commission and are otherwise interrelated by distinguishing characteristics, to wit:

    a. Can Pay's and Flasha's purpose was Plaintiffs and others similarly situated to take action based on a false premise;

    b. The result of Can Pay's and Flasha's scam was to obtain money and/or services by false pretenses;

    c. The participants were always Can Pay and Flasha;

    d. The method of commission of the illegal acts involved the same act of misleading the parties relative to the existence of precious metals either in precious metals ore or as treasure;

    e. A portion of the proceeds of the scam were deposited in the name of D T Living Trust.

168. The misconduct committed by Can Pay and Flasha demonstrates a series of related predicates involving the Plaintiffs and others similarly situated extending over a substantial period of time.

169. By its very nature, Flasha's and Can Pay's misconduct projects into the future with a threat of repetition.

170. Can Pay and Flasha devised and intended to devise a scheme or artifice to defraud, or for obtaining money, property and/or services by means of false or fraudulent pretenses, representations, or promises, as more fully described above, and transmitted

-40-

or caused to be transmitted by means of communication in interstate or foreign commerce, any writings and/or signs and/or signals and/or pictures and/or sounds for the purpose of executing such scheme or artifice.

171. Can Pay and Flasha devised and intended to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, and used the United States Mail Service in their scheme, including depositing matters or things to be sent or delivered by the Postal Service, and/or deposited and/or caused to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, and/or took or received therefrom, any such matter or thing, and/or knowingly caused to be delivered by mail or such carrier according to the direction thereon, and/or at the place at which it is directed to be delivered by the person to whom it is addressed.

172. Can Pay's and Flasha's *modus operandi* discloses a course of illegal conduct with common external organizing principle including the affairs of the entire Can Pay – Flasha ore processing enterprise.

173. Flasha and Can Pay committed a scheme and artifice to defraud Strojnik through the commission of frauds, misrepresentations, omissions, and concealments hereinabove set forth.

-41-

174. Strojnik has been damages to their property and services as a direct and consequential result of Flasha's and Can Pay's commission of the schemes and artifices alleged above.

175. Can Pay's and Flasha's illegal, unlawful and fraudulent conduct is indictable under the provisions of Title 18 of the United States Code as follows:

   a. U.S.C. §18-1341 relating to mail fraud;

   b. U.S.C. §18-1343 relating to wire fraud.

176. DT Living Trust is the beneficiary of Can Pay's and Flasha's unlawful activities.

WHEREFORE, Strojnik prays for relief as follows:

A. For damages in an amount equal to compensate Plaintiff for the damages caused by Defendants' pattern of unlawful activities;

B. Trebling said damages pursuant to statute;

C. Enjoining Defendants from committing further unlawful acts in violation of statute;

D. Piercing the veil of D T Living Trust to reach the fruits of Can Pay's and Flasha's unlawful activities;

E. Granting such other and further relief as may be appropriate.

**COUNT FOUR**
**Pattern of Unlawful Activity in Violation of State Statute**
**A.R.S. 13-2314.04**
(PGM Technologies, Inc.)

177. Plaintiffs reallege all allegations heretofore set forth as if fully restated herein.

-42-

178.  Can Pay's and Flasha's *modus operandi* as set forth above discloses a course of illegal conduct with common external organizing principle including the affairs of the entire Can Pay – Flasha enterprise, to wit:  Flasha And Can Pay induce the Plaintiffs and others similarly situated into action by promising the recovery of gold or gold treasure that does not exist.

179.  The illegal acts committed by Can Pay and Flasha with respect to Plaintiffs and others similarly situated are related in that they have the same or similar purposes, results, participants, victims or methods of commission and are otherwise interrelated by distinguishing characteristics, to wit:

    a.  Can Pay's and Flasha's purpose was Plaintiffs and others similarly situated to take action based on a false premise;

    b.  The result of Can Pay's and Flasha's scam was to obtain money and/or services by false pretenses;

    c.  The participants were always Can Pay and Flasha;

    d.  The method of commission of the illegal acts involved the same act of misleading the parties relative to the existence of precious metals either in precious metals ore or as treasure;

    e.  A portion of the proceeds of the scam were deposited in the name of  D T Living Trust.

-43-

180. The misconduct committed by Can Pay and Flasha demonstrates a series of related predicates involving the Plaintiffs and others similarly situated extending over a substantial period of time.

181. By its very nature, Flasha's and Can Pay's misconduct projects into the future with a threat of repetition.

182. Can Pay and Flasha devised and intended to devise a scheme or artifice to defraud, or for obtaining money, property and/or services by means of false or fraudulent pretenses, representations, or promises, as more fully described above, and transmitted or caused to be transmitted by means of communication in interstate or foreign commerce, any writings and/or signs and/or signals and/or pictures and/or sounds for the purpose of executing such scheme or artifice.

183. Can Pay and Flasha devised and intended to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, and used the United States Mail Service in their scheme, including depositing matters or things to be sent or delivered by the Postal Service, and/or deposited and/or caused to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, and/or took or received therefrom, any such matter or thing, and/or knowingly caused to be delivered by mail or such carrier according to the direction thereon, and/or at the place at which it is directed to be delivered by the person to whom it is addressed.

-44-

184. Can Pay's and Flasha's *modus operandi* discloses a course of illegal conduct with common external organizing principle including the affairs of the entire Can Pay – Flasha ore processing enterprise.

185. Flasha and Can Pay committed a scheme and artifice to defraud PGM through the commission of frauds, misrepresentations, omissions, and concealments hereinabove set forth.

186. PGM has been damages to their property and services as a direct and consequential result of Flasha's and Can Pay's commission of the schemes and artifices alleged above.

187. Can Pay's and Flasha's illegal, unlawful and fraudulent conduct is indictable under the provisions of both Title 13 of the Arizona Criminal Code as follows:

    a. A.R.S. §13-1801 *et seq.* - Theft;

    b. A.R.S. §13-2310 – Fraudulent Schemes And Artifices;

    c. A.R.S. §13-2312 - Illegal control of an enterprise; illegally conducting an enterprise;

188. DT Living Trust is the beneficiary of Can Pay's and Flasha's unlawful activities.

WHEREFORE, PGM prays for relief as follows:

A. For damages in an amount equal to compensate Plaintiff for the damages caused by Defendants' pattern of unlawful activities;

B. Trebling said damages pursuant to statute;

-45-

C. Enjoining Defendants from committing further unlawful acts in violation of statute;

D. Piercing the veil of D T Living Trust to reach the fruits of Can Pay's and Flasha's unlawful activities;

E. Granting such other and further relief as may be appropriate.

## COUNT FIVE
### Pattern of Unlawful Activity in Violation of State Statute
### A.R.S. 13-2314.04
### (GITA, LLC)

189. Plaintiffs reallege all allegations heretofore set forth as if fully restated herein.

190. Can Pay's and Flasha's *modus operandi* as set forth above discloses a course of illegal conduct with common external organizing principle including the affairs of the entire Can Pay – Flasha enterprise, to wit: Flasha And Can Pay induce the Plaintiffs and others similarly situated into action by promising the recovery of gold or gold treasure that does not exist.

191. The illegal acts committed by Can Pay and Flasha with respect to Plaintiffs and others similarly situated are related in that they have the same or similar purposes, results, participants, victims or methods of commission and are otherwise interrelated by distinguishing characteristics, to wit:

    a. Can Pay's and Flasha's purpose was Plaintiffs and others similarly situated to take action based on a false premise;

-46-

b. The result of Can Pay's and Flasha's scam was to obtain money and/or services by false pretenses;

c. The participants were always Can Pay and Flasha;

d. The method of commission of the illegal acts involved the same act of misleading the parties relative to the existence of precious metals either in precious metals ore or as treasure;

e. A portion of the proceeds of the scam were deposited in the name of D T Living Trust.

192. The misconduct committed by Can Pay and Flasha demonstrates a series of related predicates involving the Plaintiffs and others similarly situated extending over a substantial period of time.

193. By its very nature, Flasha's and Can Pay's misconduct projects into the future with a threat of repetition.

194. Can Pay and Flasha devised and intended to devise a scheme or artifice to defraud, or for obtaining money, property and/or services by means of false or fraudulent pretenses, representations, or promises, as more fully described above, and transmitted or caused to be transmitted by means of communication in interstate or foreign commerce, any writings and/or signs and/or signals and/or pictures and/or sounds for the purpose of executing such scheme or artifice.

-47-

195.   Can Pay and Flasha devised and intended to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, and used the United States Mail Service in their scheme, including depositing matters or things to be sent or delivered by the Postal Service, and/or deposited and/or caused to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, and/or took or received therefrom, any such matter or thing, and/or knowingly caused to be delivered by mail or such carrier according to the direction thereon, and/or at the place at which it is directed to be delivered by the person to whom it is addressed.

196.   Can Pay's and Flasha's *modus operandi* discloses a course of illegal conduct with common external organizing principle including the affairs of the entire Can Pay – Flasha ore processing enterprise.

197.   Flasha and Can Pay committed a scheme and artifice to defraud GITA through the commission of frauds, misrepresentations, omissions, and concealments hereinabove set forth.

198.   GITA has been damages to their property and services as a direct and consequential result of Flasha's and Can Pay's commission of the schemes and artifices alleged above.

199.   Can Pay's and Flasha's illegal, unlawful and fraudulent conduct is indictable under the provisions of both Title 13 of the Arizona Criminal Code as follows:

-48-

a. A.R.S. §13-1801 *et seq.* - Theft;

b. A.R.S. §13-2310 – Fraudulent Schemes And Artifices;

c. A.R.S. §13-2312 - Illegal control of an enterprise; illegally conducting an enterprise;

200. DT Living Trust is the beneficiary of Can Pay's and Flasha's unlawful activities.

WHEREFORE, GITA prays for relief as follows:

A. For damages in an amount equal to compensate Plaintiff for the damages caused by Defendants' pattern of unlawful activities;

B. Trebling said damages pursuant to statute;

C. Enjoining Defendants from committing further unlawful acts in violation of statute;

D. Piercing the veil of D T Living Trust to reach the fruits of Can Pay's and Flasha's unlawful activities;

E. Granting such other and further relief as may be appropriate.

## COUNT SIX
### Pattern of Unlawful Activity in Violation of State Statute
### A.R.S. 13-2314.04
#### (Strojnik)

201. Plaintiffs reallege all allegations heretofore set forth as if fully restated herein.

202. Can Pay's and Flasha's *modus operandi* as set forth above discloses a course of illegal conduct with common external organizing principle including the affairs of the entire Can Pay – Flasha enterprise, to wit: Flasha And Can Pay induce the Plaintiffs

-49-

and others similarly situated into action by promising the recovery of gold or gold treasure that does not exist.

203.   The illegal acts committed by Can Pay and Flasha with respect to Plaintiffs and others similarly situated are related in that they have the same or similar purposes, results, participants, victims or methods of commission and are otherwise interrelated by distinguishing characteristics, to wit:

  a. Can Pay's and Flasha's purpose was Plaintiffs and others similarly situated to take action based on a false premise;

  b. The result of Can Pay's and Flasha's scam was to obtain money and/or services by false pretenses;

  c. The participants were always Can Pay and Flasha;

  d. The method of commission of the illegal acts involved the same act of misleading the parties relative to the existence of precious metals either in precious metals ore or as treasure;

  e. A portion of the proceeds of the scam were deposited in the name of D T Living Trust.

204.   The misconduct committed by Can Pay and Flasha demonstrates a series of related predicates involving the Plaintiffs and others similarly situated extending over a substantial period of time.

–50–

205. By its very nature, Flasha's and Can Pay's misconduct projects into the future with a threat of repetition.

206. Can Pay and Flasha devised and intended to devise a scheme or artifice to defraud, or for obtaining money, property and/or services by means of false or fraudulent pretenses, representations, or promises, as more fully described above, and transmitted or caused to be transmitted by means of communication in interstate or foreign commerce, any writings and/or signs and/or signals and/or pictures and/or sounds for the purpose of executing such scheme or artifice.

207. Can Pay and Flasha devised and intended to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, and used the United States Mail Service in their scheme, including depositing matters or things to be sent or delivered by the Postal Service, and/or deposited and/or caused to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, and/or took or received therefrom, any such matter or thing, and/or knowingly caused to be delivered by mail or such carrier according to the direction thereon, and/or at the place at which it is directed to be delivered by the person to whom it is addressed.

208. Can Pay's and Flasha's *modus operandi* discloses a course of illegal conduct with common external organizing principle including the affairs of the entire Can Pay – Flasha ore processing enterprise.

-51-

209. Flasha and Can Pay committed a scheme and artifice to defraud Strojnik through the commission of frauds, misrepresentations, omissions, and concealments hereinabove set forth.

210. Strojnik has been damages to their property and services as a direct and consequential result of Flasha's and Can Pay's commission of the schemes and artifices alleged above.

211. Can Pay's and Flasha's illegal, unlawful and fraudulent conduct is indictable under the provisions of both Title 13 of the Arizona Criminal Code as follows:

    a. A.R.S. §13-1801 *et seq.* - Theft;

    b. A.R.S. §13-2310 – Fraudulent Schemes And Artifices;

    c. A.R.S. §13-2312 - Illegal control of an enterprise; illegally conducting an enterprise;

212. DT Living Trust is the beneficiary of Can Pay's and Flasha's unlawful activities.

WHEREFORE, Strojnik prays for relief as follows:

A. For damages in an amount equal to compensate Plaintiff for the damages caused by Defendants' pattern of unlawful activities;

B. Trebling said damages pursuant to statute;

C. Enjoining Defendants from committing further unlawful acts in violation of statute;

-52-

D. Piercing the veil of D T Living Trust to reach the fruits of Can Pay's and Flasha's unlawful activities;

E. Granting such other and further relief as may be appropriate.

**COUNT SEVEN**
**Common Law Fraud**
(PGM Technologies)

213. Plaintiffs reallege all allegations heretofore set forth as if fully restated herein.

214. Flasha and Can Pay made and affirmed to PGM the statements more fully described above.

215. The statements referenced above are statements of material fact.

216. The statements referenced above were knowingly false when made.

217. The statements referenced above were made with the intention that PGM rely thereon.

218. The statements referenced above were justifiably relied upon by PGM.

219. PGM has been damaged by Defendants' misrepresentation of fact in an amount to be proven at the time of trial.

220. Defendants' actions were intentional and designed to benefit Defendants with full knowledge that PGM would be damaged thereby. Therefore, PGM is entitled to an additional award of punitive damages sufficient to deter those in the shoed of Defendants from engaging in like fraudulent conduct.

WHEREFORE, PGM prays for relief as follows:

–53–

A. For damages in an amount equal to compensate PGM for the damages caused by Defendants' fraud;

B. Enjoining Defendants from committing further unlawful acts in violation of statute;

C. Piercing the veil of D T Living Trust to reach the fruits of Can Pay's and Flasha's unlawful activities;

D. Granting such other and further relief as may be appropriate.

## COUNT EIGHT
## Common Law Fraud
### (GITA, LLC)

221. Plaintiffs reallege all allegations heretofore set forth as if fully restated herein.

222. Flasha and Can Pay made and affirmed to GITA the statements more fully described above.

223. The statements referenced above are statements of material fact.

224. The statements referenced above were knowingly false when made.

225. The statements referenced above were made with the intention that GITA rely thereon.

226. The statements referenced above were justifiably relied upon by GITA.

227. GITA has been damaged by Defendants' misrepresentation of fact in an amount to be proven at the time of trial.

–54–

228. Defendants' actions were intentional and designed to benefit Defendants with full knowledge that GITA would be damaged thereby. Therefore, GITA is entitled to an additional award of punitive damages sufficient to deter those in the shoed of Defendants from engaging in like fraudulent conduct.

WHEREFORE, GITA prays for relief as follows:

A. For damages in an amount equal to compensate GITA for the damages caused by Defendants' fraud;

B. Enjoining Defendants from committing further unlawful acts in violation of statute;

C. Piercing the veil of D T Living Trust to reach the fruits of Can Pay's and Flasha's unlawful activities;

D. Granting such other and further relief as may be appropriate.

## COUNT NINE
## Common Law Fraud
(Strojnik)

229. Plaintiffs reallege all allegations heretofore set forth as if fully restated herein.

230. Flasha and Can Pay made and affirmed to Strojnik the statements more fully described above.

231. The statements referenced above are statements of material fact.

232. The statements referenced above were knowingly false when made.

-55-

233. The statements referenced above were made with the intention that Strojnik rely thereon.

234. The statements referenced above were justifiably relied upon by Strojnik.

235. Strojnik has been damaged by Defendants' misrepresentation of fact in an amount to be proven at the time of trial.

236. Defendants' actions were intentional and designed to benefit Defendants with full knowledge that Strojnik would be damaged thereby. Therefore, Strojnik is entitled to an additional award of punitive damages sufficient to deter those in the shoed of Defendants from engaging in like fraudulent conduct.

WHEREFORE, Strojnik prays for relief as follows:

A. For damages in an amount equal to compensate Strojnik for the damages caused by Defendants' fraud;

B. Enjoining Defendants from committing further unlawful acts in violation of statute;

C. Piercing the veil of D T Living Trust to reach the fruits of Can Pay's and Flasha's unlawful activities;

D. Granting such other and further relief as may be appropriate.

## COUNT TEN
### Misrepresentation
(PGM Technologies, Inc.)

237. Plaintiff realleges all allegations heretofore set forth as if fully restated herein.

238.   Flasha and Can Pay made and affirmed to PGM, either intentionally, negligently or with a knowing disregard for the truth or falsity thereof, the statements of fact as more fully described above.

239.   The statements referenced above are statements of material fact.

240.   The statements referenced above were false when made.

241.   The statements referenced above were made with the intention that PGM rely thereon.

242.   The statements referenced above were justifiably relied upon by PGM.

243.   PGM has been damaged by Defendants' misrepresentation of fact in an amount to be proven at the time of trial.

244.   Defendants' actions were intentional and designed to benefit Defendants with full knowledge that PGM would be damaged thereby.  Therefore, PGM is entitled to an additional award of punitive damages sufficient to deter those in the shoed of Defendants from engaging in like fraudulent conduct.

WHEREFORE, PGM prays for relief as follows:

A. For damages in an amount equal to compensate Plaintiff for the damages caused by Defendants' fraud;

B. Enjoining Defendants from committing further unlawful acts in violation of statute;

-57-

C. Piercing the veil of D T Living Trust to reach the fruits of Can Pay's and

Flasha's unlawful activities;

D. Granting such other and further relief as may be appropriate.

**COUNT ELEVEN**
**Misrepresentation**
(GITA, LLC)

245.  Plaintiff realleges all allegations heretofore set forth as if fully restated herein.

246.  Flasha and Can Pay made and affirmed to GITA, either intentionally, negligently

or with a knowing disregard for the truth or falsity thereof, the statements of fact as

more fully described above.

247.  The statements referenced above are statements of material fact.

248.  The statements referenced above were false when made.

249.  The statements referenced above were made with the intention that GITA rely

thereon.

250.  The statements referenced above were justifiably relied upon by GITA.

251.  PGM has been damaged by Defendants' misrepresentation of fact in an amount to

be proven at the time of trial.

252.  Defendants' actions were intentional and designed to benefit Defendants with full

knowledge that GITA would be damaged thereby.  Therefore, GITA is entitled to an

additional award of punitive damages sufficient to deter those in the shoed of

Defendants from engaging in like fraudulent conduct.

-58-

WHEREFORE, GITA prays for relief as follows:

A. For damages in an amount equal to compensate Plaintiff for the damages caused by Defendants' fraud;

B. Enjoining Defendants from committing further unlawful acts in violation of statute;

C. Piercing the veil of D T Living Trust to reach the fruits of Can Pay's and Flasha's unlawful activities;

D. Granting such other and further relief as may be appropriate.

## COUNT TWELVE
### Misrepresentation
(Strojnik)

253. Plaintiff realleges all allegations heretofore set forth as if fully restated herein.

254. Flasha and Can Pay made and affirmed to Strojnik, either intentionally, negligently or with a knowing disregard for the truth or falsity thereof, the statements of fact as more fully described above.

255. The statements referenced above are statements of material fact.

256. The statements referenced above were false when made.

257. The statements referenced above were made with the intention that Strojnik rely thereon.

258. The statements referenced above were justifiably relied upon by Strojnik.

-59-

259. Strojnik has been damaged by Defendants' misrepresentation of fact in an amount to be proven at the time of trial.

260. Defendants' actions were intentional and designed to benefit Defendants with full knowledge that Strojnik would be damaged thereby. Therefore, Strojnik is entitled to an additional award of punitive damages sufficient to deter those in the shoed of Defendants from engaging in like fraudulent conduct.

WHEREFORE, Strojnik prays for relief as follows:

A. For damages in an amount equal to compensate Plaintiff for the damages caused by Defendants' fraud;

B. Enjoining Defendants from committing further unlawful acts in violation of statute;

C. Piercing the veil of D T Living Trust to reach the fruits of Can Pay's and Flasha's unlawful activities;

D. Granting such other and further relief as may be appropriate.

### COUNT THIRTEEN
### Concealment
(PGM Technologies)

261. Plaintiff realleges all allegations heretofore set forth as if fully restated herein.

262. Defendants Flasha and Can and Flasha made statements of fact to PGM as described above.

-60-

263. Having offered these statements to PGM as statements of fact, Defendants had a duty of explaining the facts, circumstances and events that would make the statements made true.

264. Flasha and Can Pay failed to disclose to PGM that the representations were incomplete and that Flasha and Can Pay had information that would make the representations complete, to wit, as relating to this Count: That there is no specialized "Flasha Process"; that Flasha and Can Pay use Spiked Flux to achieve the results; that Flasha and Can Pay do now own the "Flasha Technology"; and that there is no buried treasure.

265. Defendants failed to fulfill their duty of disclosure.

266. Defendants intentionally concealed the facts of their fraudulent activities from PGM.

267. Defendants' breach of duty to correct misrepresentations and their concealment of facts and intentions were made with the intention that PGM rely thereon.

268. The statements, omissions and concealments referenced above were justifiably relied upon by PGM.

269. Strojnik has been damaged by Defendants' omissions and concealments of fact in an amount to be proven at the time of trial.

270. Defendants' actions were intentional and designed to benefit Defendants with full knowledge that PGM would be damaged thereby. Therefore, PGM is entitled to an

-61-

additional award of punitive damages sufficient to deter those in the shoed of Defendants from engaging in like fraudulent conduct.

WHEREFORE, PGM prays for relief as follows:

A. For damages in an amount equal to compensate PGM for the damages caused by Defendants' fraud;

B. Enjoining Defendants from committing further unlawful acts in violation of statute;

C. Piercing the veil of D T Living Trust to reach the fruits of Can Pay's and Flasha's unlawful activities;

D. Granting such other and further relief as may be appropriate.

### COUNT FOURTEEN
**Concealment**
(GITA, LLC)

271. Plaintiff realleges all allegations heretofore set forth as if fully restated herein.

272. Defendants Flasha and Can and Flasha made statements of fact to GITA as described above.

273. Having offered these statements to GITA as statements of fact, Defendants had a duty of explaining the facts, circumstances and events that would make the statements made true.

274. Flasha and Can Pay failed to disclose to GITA that the representations were incomplete and that Flasha and Can Pay had information that would make the

-62-

representations complete, to wit, as relating to this Count: That there is no specialized "Flasha Process"; that Flasha and Can Pay use Spiked Flux to achieve the results; that Flasha and Can Pay do now own the "Flasha Technology"; and that there is no buried treasure.

275. Defendants failed to fulfill their duty of disclosure.

276. Defendants intentionally concealed the facts of their fraudulent activities from PGM.

277. Defendants' breach of duty to correct misrepresentations and their concealment of facts and intentions were made with the intention that GITA rely thereon.

278. The statements, omissions and concealments referenced above were justifiably relied upon by GITA.

279. Strojnik has been damaged by Defendants' omissions and concealments of fact in an amount to be proven at the time of trial.

280. Defendants' actions were intentional and designed to benefit Defendants with full knowledge that GITA would be damaged thereby. Therefore, GITA is entitled to an additional award of punitive damages sufficient to deter those in the shoed of Defendants from engaging in like fraudulent conduct.

WHEREFORE, GITA prays for relief as follows:

A. For damages in an amount equal to compensate GITA for the damages caused by Defendants' fraud;

-63-

B. Enjoining Defendants from committing further unlawful acts in violation of statute;

C. Piercing the veil of D T Living Trust to reach the fruits of Can Pay's and Flasha's unlawful activities;

D. Granting such other and further relief as may be appropriate.

## COUNT FIFTEEN
### Concealment
(Strojnik)

281. Plaintiff realleges all allegations heretofore set forth as if fully restated herein.

282. Defendants Flasha and Can and Flasha made statements of fact to Strojnik as described above.

283. Having offered these statements to Strojnik as statements of fact, Defendants had a duty of explaining the facts, circumstances and events that would make the statements made true.

284. Flasha and Can Pay failed to disclose to Strojnik that the representations were incomplete and that Flasha and Can Pay had information that would make the representations complete, to wit, as relating to this Count: That there is no specialized "Flasha Process"; that Flasha and Can Pay use Spiked Flux to achieve the results; that Flasha and Can Pay do now own the "Flasha Technology"; and that there is no buried treasure.

285. Defendants failed to fulfill their duty of disclosure.

-64-

286. Defendants intentionally concealed the facts of their fraudulent activities from PGM.

287. Defendants' breach of duty to correct misrepresentations and their concealment of facts and intentions were made with the intention that Strojnik rely thereon.

288. The statements, omissions and concealments referenced above were justifiably relied upon by Strojnik.

289. Strojnik has been damaged by Defendants' omissions and concealments of fact in an amount to be proven at the time of trial.

290. Defendants' actions were intentional and designed to benefit Defendants with full knowledge that Strojnik would be damaged thereby. Therefore, Strojnik is entitled to an additional award of punitive damages sufficient to deter those in the shoed of Defendants from engaging in like fraudulent conduct.

WHEREFORE, Strojnik prays for relief as follows:

A. For damages in an amount equal to compensate Strojnik for the damages caused by Defendants' fraud;

B. Enjoining Defendants from committing further unlawful acts in violation of statute;

C. Piercing the veil of D T Living Trust to reach the fruits of Can Pay's and Flasha's unlawful activities;

D. Granting such other and further relief as may be appropriate.

-65-

## COUNT SIXTEEN
### Breach of Contract
(Strojnik)

291.  Plaintiff realleges all allegations heretofore set forth as if fully restated herein.

292.  Can Pay and Flasha breached their agreement to pay fees owed to Strojnik for General Representation and Wintergreen Representation.

293.  Strojnik made a demand on Can Pay and Flasha for payment, but Can pay and Flasha refused to pay.

294.  There are now due and payable from Flasha and Can Pay the following sums:

    a.  $74,780.75 for General Representation; and

    b.  $54,870.00 for Wintergreen Representation.

    c.  Plus interest at the highest legal rate.

295.  This matter arises in contract, entitling Plaintiff to an award of attorney's fees pursuant to ARS § 12-341.01.

WHEREFORE, Plaintiff prays for relief as follows:

A. For damages in an amount no less than $129,650.75;

B. For interest at the highest legal rate;

C. For costs and attorney's fees insofar as this matter arises out of contract, pursuant to ARS 12-341.01;

D. For such other and further relief as may be appropriate.

RESPECTFULLY submitted this 26ᵗʰ day of February, 2005.

_Thos L Kummer_

Thomas Kummer
*Pro hac vice*
Attorney for Plaintiff

# VERIFICATION

The undersigned Peter Strojnik, one of the Plaintiff's herein, having read the foregoing Verified Complaint, does hereby declare under the penalty of perjury that the statements and allegations made above with reference to the allegations by Peter Strojnik, P.C. and GITA, LLC, are true and correct to the best of his memory, knowledge, and belief.

DATED _2-26-05_

_____
Peter Strojnik

# VERIFICATION

The undersigned Edmundo Uribe, authorized representative of PGM Technologies, Inc., one of the Plaintiff's herein, having read the foregoing Verified Complaint, does hereby declare under the penalty of perjury that the statements and allegations made above with reference to the allegations by PGM Technologies, Inc., are true and correct to the best of his memory, knowledge, and belief.

DATED _2-26-05_

_____
Edmundo Uribe

-1-

Statements of Account shall be produced once the Debtor has had the opportunity to object to the disclosure on the basis of her attorney-client privilege.

# EXHIBIT "G"

1          IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

2               IN AND FOR THE COUNTY OF MARICOPA

3

4     H&E EQUIPMENT SERVICES, LLC  )
                                   )
5               Plaintiff,         )
                                   )  CV2003-002908
6          vs.                     )
                                   )
7     CAN PAY MINING CO., et al,   )
                                   )
8               Defendant.         )
                       _____

9

10

11                              Phoenix, Arizona
                                 April 7, 2005
12

13         BEFORE:    The Honorable PAUL KATZ
                      Judge of the Superior Court
14

15

16

17              REPORTER'S_TRANSCRIPT_OF_PROCEEDINGS

                EXCERPT OF EVIDENTIARY HEARING
18

19

20    PREPARED FOR:
      COPY
21

22

23

24
                            LORRAINE CHALKEY, RPR
25                       Certified Court Reporter #50104

# EXHIBIT "H"

```
 1                    A P P E A R A N C E S
- - - - - - - - - - -

 2      FOR THE PLAINTIFF:

 3            Mr. Ernest Collins

 4
        FOR THE DEFENDANT:
 5
              Mr. Thomas M. Hoidal
 6            Mr. Joseph D. Johnson

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                                                        Phoenix, Arizona
                                                          April 7, 2005
2

3

4                          P R O C E E D I N G S

- - - - - - - - - -

5       IN OPEN COURT:

6

7              (Whereupon, the requested portion to be transcribed

8       is as follows:)

9              THE COURT:  There were two primary issues that this

10      Judge was concerned with.  The first one was that the defendant

11      didn't intend -- did not attend a compulsory settlement

12      conference and I had to decide whether or not he had notice of

13      the proceedings in question.

14              I have received a number of documents from Mr.

15      Strojnik that I have made available in part to plaintiff's

16      counsel, exhibits one, two, three, four, five, six and 11,

17      because as far as this Judge is concerned, the defendant has

18      waived any attorney/client privilege with respect to

19      communications between him and Mr. Strojnik concerning

20      information or advice that Mr. Strojnik gave to the defendant

21      or received from the defendant as regards future Court

22      proceedings or from this date forward you're on your own.

23              And I have reviewed those records and they do

24      indicate that -- they are not under oath, I haven't taken

25      testimony, but they do indicate that the defendant was offered

1 for several months prior to withdrawal the opportunity to pick

2 up his file from Mr. Strojnik and declined to do so.  That's

3 the conclusion, initial conclusion that I've reached.

4   And the other thing that appears is that Mr. Strojnik

5 did send a letter advising defendant upon his withdrawal of two

6 deadlines, the trial date as well as the settlement conference

7 date.  Though it was sent by fax, so I don't know whether or

8 not it was received by the defendant.

9   But the defendant's credibility is on very thin ice

10 in these proceedings if you look at the file from matters that

11 occurred before this Judge took the file over in terms of his

12 honesty or integrity with the Court delaying proceedings

13 unnecessarily.

14   So where we're at, I have two issues I think I need

15 to get decided.  One, whether the Court should impose sanctions

16 for the missing of a settlement conference.  I have mixed

17 feelings about doing that.  I'll tell plaintiff's counsel up

18 front it appears that the notice given to the client was via

19 fax and I have no way of proving that he actually ever received

20 it even though Mr. Strojnik would probably testify that I sent

21 it to him and whether or not he knew of the settlement

22 conference date or not, I don't know.

23   Second issue though is whether to continue the trial

24 and the answer is probably no.  Even though I know that current

25 counsel would love to get this case prepared the way it should

1    have been prepared, Mr. Strojnik had an opportunity to do that,

2    I don't think he was derelict, we can discuss that issue, in

3    doing what he needed to do, I'm not sure he had the full

4    cooperation of his client in that regard. But this case is too

5    old and shouldn't be continued.

6        There was more than an adequate opportunity to get it

7    prepared and I was optimistic that the parties might be able to

8    settle. If the parties are still able to settle it, that's

9    fine. If not, we'll have a jury take care of it next week

10   because I'm not inclined under the circumstances that I'm aware

11   of and I might be aware of not all of the circumstances, to cut

12   anymore slack to the parties in a case that should have gone to

13   trial probably a year ago.

14        (Whereupon, the requested portion to be transcribed

15   is completed.)

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5                    C E R T I F I C A T E

6

7

8

9           I, LORRAINE CHALKEY, do hereby certify that the

10   proceedings had upon the hearing of the foregoing matter are

11   contained fully and accurately in the shorthand record made by

12   me thereof, and that the foregoing typewritten pages of said

13   transcript contain a full, true and correct transcript of my

14   shorthand notes taken by me as aforesaid, all to the best of my

15   skill and ability.

16           DATED this _____day of _____, 2005.

17

18

19

20                                    _____
                                     LORRAINE CHALKEY, RPR
21                                   Certified Court Reporter
                                     CCR #50104
22

23

24

25

## DECLARATION OF PETER STROJNIK
under the penalty of perjury

Peter Strojnik makes the following declaration under the penalty of perjury

1. I am an attorney licensed to practice in the State of Arizona. I was admitted to practice in 1980.

2. I represented David and Terri Flasha, and their companies, including Can Pay Mining Co., Inc., during the period of August, 2001, to December, 2004.

3. My Company, Peter Strojnik, P.C., is the plaintiff in the United States District Court for the District of Arizona under cause number CV05- 0637-PHX-ROS. David and Terri Flasha are defendants in that case.

4. On or about April 7, 2005, in connection with a case pending in the Maricopa County Superior Court captioned *H & E Equipment v. Can Pay Mining et al* . CV 2003-002908, Joseph Johnson, the attorney for Flasha's stated that the Flasha's intended to file for the protection of Title 11 of the US code. *See* attached exchange of e-mails.

5. During the following period, the undersigned learned that David and Terri Flasha transported four barrels of what are believed to be precious metal concentrates to California (Metech Internationals) and New Jersey (Catalytics, S.A.).

6. In connection with the Involuntary Trusteeship, the undersigned attempted to have another trustee take possession of the precious metals barrels located in California, to wit, AmeriChem Engineering Services, Inc.

7. The undersigned has not been able to have the barrels transported to AmeriChem, and Metech and Catalytics remain in possession.

8. In or about November of 2005, the undersigned was contacted to invest into a so called "hawk rock" treasure sought by David Flasha.

9. In connection with the "hawk rock" project, the undersigned met with David Flasha who proposed that the money owed by Terri and David Flasha would be paid out of the "treasure" if it were found on the "hawk rock" property; however, if no "treasure" were found, David Flasha would pay the undersigned with 120 1oz gold pieces.

# EXHIBIT "I"

10. During this conversation, David Flasha indicated that he had access both to 1oz gold pieces and 10 oz hold bars, and that these pieces were located in the Philippines.

The above statements are made under the penalty of perjury.

DATED this _15_ day of March, 2006.

Peter Strojnik

| Subj: | **RE: Terri Flasha** |
| Date: | 3/13/2006 1:36:54 P.M. US Mountain Standard Time |
| From: | ecollins@bzhlaw.com |
| To: | Strojnik@aol.com |

Peter, I was unable to open the transcript that you attached. It said I don't have the appropriate permission. Regardless, in the time frame of last spring and the hearing that we were involved in to settle ACM v. Can Pay and David and Terri Flasha, I recall having a conversation with the Flashas' attorney, Joe Johnson wherein he indicated to me either that he had recommended they file bankruptcy or that he had actually referred them to a bankruptcy attorney. I don't recall if it was just before the hearing or just after the hearing but it was in that general time frame.

---

**From:** Strojnik@aol.com [mailto:Strojnik@aol.com]
**Sent:** Monday, March 13, 2006 9:56 AM
**To:** Ernest Collins
**Cc:** Strojnik@aol.com
**Subject:** Terri Flasha

Hi Ernie:

It was good talking to you again this morning. I attach the transcript of the April 7, 2005, hearing to give you a time reference.

Peter Strojnik
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-297-3019
Facsimile: 602-296-0135
Cell: 602-524-6602
e-mail strojnik@aol.com
website: strojnik.com